# DEPARTMENT OF THE AIR FORCE
## WASHON DC

**Office of the Assistant Secretary**

Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmbers Lane
Joint Base Andrews NAF Washington, MD 20762-6435

Lisa Reyes, Clerk of Court
United States Court of Federal Claims
Howard T. Markey national courts Building
717 Madison Place, NW
Washington, D.C. 20439

Re: Torrence V United States, No. 24-258

Dear Clerk of the Court:

Attached are two copies of the Air Force Board for Correction of Military Records determination, with the accompanied record of proceedings, for the Federal Claims Remand, No. 24-258, as outlined in RCFC 52.2(d).

If you have any questions, please feel free to contact our office at (240) 612-5351 or by email at janet.hutson@us.af.mil.

JANET HUTSON, DAF, Civ
Director of Operations, AFBCMR

Attachments:
Decisional Document and Record of Proceedings, 2 copies

Received – USCFC
APR 2 1 2025

# DEPARTMENT OF THE AIR FORCE
### WASHINGTON DC

**Office of the Assistant Secretary**

Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmers Lane
Joint Base Andrews NAF Washington, MD 20762-6435

Dear Applicant:

After careful consideration of your application, Docket Number BC-2021-02580-2, the Air Force Board for Correction of Military Records determined there was insufficient evidence of an error or injustice. Accordingly, your application is denied.

You have the right to request reconsideration. To do so, you must send in a new DD Form 149, *Application for Correction of Military Record*, with supporting evidence, to the address above. You must present and clearly identify evidence not considered with your original application. Please note that restating facts previously addressed by the Board, making uncorroborated personal observations, or making additional arguments are not grounds for reopening a case.

This action is taken under authority delegated by the Secretary of the Air Force.

Sincerely,

3/20/2025

X *Deborah J Davidson*

Signed by: USAF
DEBORAH F. DAVIDSON, GS-15, DAF
Executive Director
Air Force Board for Correction of Military Records

Attachment:
Record of Proceedings

CUI//SP-MIL/SP-PRVCY

# UNITED STATES AIR FORCE
# BOARD FOR CORRECTION OF MILITARY RECORDS

## ADDENDUM TO RECORD OF PROCEEDINGS

| | |
|---|---|
| **IN THE MATTER OF:** | **DOCKET NUMBER:** BC-2021-02580-2 |
| JENNER M. TORRENCE | **COUNSEL:** JOSEPH D. WILKINSON II |
| | **HEARING REQUESTED:** YES |

## APPLICANT'S REQUEST

The Board reconsider his request for the following:

1. The conclusions of the commander directed investigations (CDI) completed on 31 May 17 and 19 Jan 18 be found invalid.

2. His letters of reprimand (LOR) dated 13 Jun 17 and 26 Jan 18 be removed from his record.

3. His referral officer performance report (OPR) for the reporting period ending 1 Nov 18 be removed from his record.

The applicant also makes the following new requests:

1. His record be corrected to reflect he was not curtailed from his Active Guard Reserve (AGR) tour on 30 Jun 18.

2. His retirement records be adjusted to reflect an additional 257 days of active duty service.

3. He receive active duty back pay in the amount of $74,762.00, basic allowance for housing (BAH) and basic allowance for subsistence (BAS) in the amount of $2,162.00 and Aviation Career Incentive Pay (ACIP) in the amount of $7,140.00 for the period of 30 Jun 18 to 14 Mar 19.

4. He receive $75,000.00 in aviation continuation pay (ACP).

## STATEMENT OF FACTS

The applicant is a retired Air Force lieutenant colonel (O-5).

On 29 Mar 16, the applicant entered a period of active duty with the ANG as an AGR.

The Commander Directed Investigation (CDI) Report of Investigation (ROI) Concerning Inappropriate Relationships and Other Misconduct dated 31 May 17 reflects an investigating officer (IO) was appointed to investigate allegations the applicant, a married man, and another officer and married woman (AM) wrongfully had sexual intercourse to the prejudice of good order and discipline. The investigation involved one complainant; however, the scope of the

Controlled by:  SAF/MRB
CUI Categories:  SP-MIL/SP-PRVCY
Limited Dissemination Control:  N/A
POC:  SAF.MRBC.Workflow@us.af.mil

**CUI//SP-MIL/SP-PRVCY**

investigation widened as information was gathered from multiple witnesses to the events that occurred during a unit deployment from Dec 16 to Feb 17. The following allegation was substantiated:

**Allegation 2.** The applicant knowingly had an extramarital affair or unprofessional relationship. Based on the preponderance of the evidence and credible testimony regarding the temporary duty (TDY) and circumstantial evidence, the IO concluded the applicant knowingly had an extramarital affair or unprofessional relationship. **(SUBSTANTIATED).**

The ROI states the facts for Allegation 2 include the observations made by the complainant on the evening of 4 May 17 around 1900 hours. Further, multiple witnesses came forward to tell the IO the long series of events that created a strong appearance the applicant and AM were engaged in an unprofessional relationship (at a minimum) that was prejudicial to good order and discipline and was of a nature to potentially bring discredit. The complainant's belief the applicant and AM were engaged in sexual intercourse in the vault located on base the evening of 4 May 17 was just one of several examples where an inappropriate relationship was apparent. There were 14 witnesses, to include the applicant and AM, interviewed for the CDI.

On 13 Jun 17, the applicant received an LOR from the ANG OG/CC. The applicant was reprimanded for his inappropriate relationship with a fellow officer (AM) in the OG. He was reprimanded for displaying poor judgment and failure to fulfill his responsibilities as a field grade officer (FGO) from Dec 16 to May 17. His actions during the period created the perception of an inappropriate relationship with another officer, his actions were prejudicial to good order and discipline and were of a nature to bring discredit upon the Armed Forces. It was stated the LOR would remain on file in accordance with Air Force and Inspector General (IG) regulations.

The CDI ROI Concerning the Abuse of Authority and Other Misconduct dated 19 Jan 18 reflects an IO was appointed to conduct a CDI into all aspects of events that occurred on 16 Oct 17 involving an altercation between the applicant and PD while the two were on TDY. The ROI includes four allegations pertaining to the applicant. The following two allegations were substantiated:

**Allegation 3:** On 16 Oct 17, the applicant engaged in an unprofessional relationship (fraternization) as the term is defined in AFI 36-2909, *Air Force Professional Relationships and Conduct.* A video showed the applicant with a female in civilian clothes who was an enlisted services team member of another state ANG. The IO also noted the applicant was married to someone else. **(SUBSTANTIATED).**

**Allegation 5:** On 16 Oct 17, the applicant made false statements concerning the 16 Oct 17 allegations. After reviewing the various witness testimonies, to include the applicant's interview with his attorney stating he could not remember the events, video and texts, the IO concluded the applicant made false statements. **(SUBSTANTIATED).**

On 26 Jan 18, the applicant received a LOR from the ANG OG/CC. The LOR states an investigation disclosed that on 16 Oct 17, while on a TDY assignment, he compromised his standing as an FGO while at the hotel bar. While in uniform, he fraternized with an enlisted member and engaged in unprofessional behavior, a discredit to an officer of his rank, the Air Force and the Armed Forces. He was also untruthful to his chain of command concerning the 16 Oct 17 encounter, choosing to make false verbal and written statements about the allegations on a number of occasions. His actions and false statements were prejudicial to good order and discipline,

contrary to core values of the Air Force, unbecoming of an FGO and were of a nature to bring discredit upon the Armed Forces.

In the rebuttal to the LOR dated 5 Feb 18, the applicant stated he did not intentionally convey anything false. He did his best to clarify. During the CDI interview, he stated to the IO that AM had resent the text he sent to her the evening of 16 Oct 17. He did not recall the event the same way it was portrayed in his text to her. At the time he sent AM the text, he was still trying to mentally reconstruct the details. He was disappointed the IO did not include his clarification. He did not feel his account substantively contradicted any video evidence. He also did not commit fraternization. He was not previously acquainted with the individual and did not know she was enlisted. Per his own recollection and as portrayed by the video evidence, he did nothing lude or indecent during the encounter sitting at the bar. He did not believe any of his actions compromised the chain of command or good order in discipline. He would assure this type of interaction did not again occur in the future. He wished he had terminated the interaction more quickly but did not believe it constituted an inappropriate relationship.

On 15 Mar 18, the ANG Wing Commander (WG/CC), in accordance with ANGI 36-101, *Air National Guard Active Guard and Reserve (AGR) Program*, paragraph 8.5, initiated curtailment of the applicant's AGR tour. The reason for the curtailment of his AGR tour was due to substantiated allegations of false statements made to senior officers and substantiated allegations of unprofessional relationships with both officer and enlisted military members.

On 30 Jun 18, the applicant was honorably released from his AGR tour for completion of required active service. The separation authority is AFI 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members*. He was credited with two years, three months and two days of active duty service.

The applicant received a referral OPR for the reporting period 2 Nov 17 to 1 Nov 18. His rater stated the reason for the referral OPR was appearance of an unfavorable professional relationship at home and while deployed with an O-4, fraternization in uniform at a bar, he lied when asked about the situation and was issued LORs. The additional rater recommended focus on officership and AFI compliance; leadership, professional qualities and judgment needed improvement.

The applicant performed a period of active duty in the Air Force Reserve (AFR) from 15 Mar 19 to 28 Feb 22. He was honorably released from active duty for completion of required active duty service. He was credited with 2 years, 11 months and 16 days of active duty service.

On 9 Jul 20, an investigation was initiated per his State ANG equal opportunity (EO) complaint that the OG/CC discriminated against him. The State Equal Employment Manager oversees the EO complaint process, which is separate from an IG complaint of reprisal filed under 10 U.S.C. § 1034. The EO complaint would undergo an informal request for resolution (IRR). If the complaint is unable to be resolved in 180 days, a formal request for resolution (FRR) can be filed.

On 1 Mar 22, the applicant was placed on the Air Force retired list in the grade of O-5. His active service for retirement is 20 years, 9 months and 10 days. His service per 10 U.S.C. § 1405 is 20 years, 11 months and 28 days.

## RESUME OF THE CASE

On 22 Jun 21, the Board considered and denied his request for removal of the LORs dated 13 Jun 17 and 26 Jan 18; or in the alternative, they be placed in a secured file, and his referral OPR for

**CUI//SP-MIL/SP-PRVCY**

the reporting period ending 1 Nov 18 be removed from his record. Counsel, on behalf of the applicant, contended he was the subject of baseless investigations after fraudulent allegations were made in reprisal for making a protected communication, in violation of 10 U.S.C. § 1034. The Board agreed with the State ANG DC JA that counsel had not sustained the burden of proof to overturn the presumption of regularity. While counsel contended the applicant did not commit adultery or engage in fraternization, the Board found the evidence sufficient to conclude the applicant violated AFI 36-2909 by failing to maintain professional relationships and displaying poor judgment, which were prejudicial to good order and discipline. Counsel also contended the applicant was reprised against for making protected communication. However, based on the evidence it appeared the applicant's EEO complaint of discrimination and reprisal were reviewed by the IRR and FRR in accordance with regulation. The Board found no evidence the applicant was reprised against for making protected communication in violation of AFI 90-301 and 10 U.S.C. § 1034. The ANG DC JA in the advisory opinion noted the applicant and AM raised various claims against the Air Force and the National Guard entities. The majority of the claims were rebutted by evidence collected during the various investigations. The sexual harassment allegation substantiated in the CDI was also provided to the WG/CC on 5 Jun 18 and the report was turned over to ANGRC/JA for consideration by a Title 10 commander. Each of the matters were thoroughly investigated. The evidence from the investigation is sufficient.

For an accounting of the applicant's original request and the rationale of the earlier decision, see the AFBCMR Letter and Record of Proceedings at Exhibit F.

The Court of Federal Claims (CoFC) in an order filed on 3 Sep 24 remanded the applicant's case to the AFBCMR for reconsideration and stayed the case pending completion of the remand proceedings. The CoFC ordered the AFBCMR to reconsider the applicant's request and allow him to submit video footage and photographic evidence and any other evidence and arguments not previously filed with the AFBCMR.

Counsel, on behalf of the applicant, submitted a DD Form 149, *Application for Correction of Military Record*, dated 2 Oct 24 for reconsideration of his request. Counsel requested the Board reconsider removal of the LORs and OPR. Counsel also made new requests to show he was not curtailed from his AGR tour in 2018, he receive back pay, to include BAH and BAS, ACP and ACIP.

His first LOR found he violated AFI 1-1, *Air Force Standards*, and AFI 36-2909, *Air Force Professional Relationships and Conduct,* by having an inappropriate relationship with a fellow officer but failed to establish he violated any Air Force standards. The findings of the second investigation contracted the video and photographic evidence it claimed to rest on. He requests a personal appearance so he can testify to the video. Without the badly grounded findings, his AGR tour would not have been curtailed and he would not have received a referral OPR.

His petition parallels the federal action requested and differs from his prior AFBCMR application. His request focuses on the lack of evidence for the conclusion in the CDIs and failure to establish certain findings, in violation of Air Force standards. It is argued a Title 32 commander cannot reprimand an officer for actions taken while on Title 10 status, an argument that was not addressed in his prior petition. The Board also did not previously consider a set of photos and security video footage taken in a bar while TDY.

The first investigation against the applicant was based on a claim he had created a perception of an inappropriate relationship with AM. She was not his subordinate and he did not outrank her at

CUI//SP-MIL/SP-PRVCY

the time. The investigation did not establish the suspicions were true, and even if they were true they would not have violated AFI 1-1 and AFI 36-2909, or any other military standard.

The second investigation was based on a claim he fraternized with an enlisted airman in a bar while TDY. However, the photo and video footage contradict this finding. They would be glad to demonstrate before the Board in a personal appearance.

The reprimands and the referral OPR were improper. The command's later personnel actions, particularly the curtailment of his AGR tour, rested on the same investigation were also improper. The Board should find the actions improper and order the applicant to receive appropriate compensation.

The applicant and AM were both deployed between Dec 16 and Feb 17. At the time, they were on Title 10 orders. While they worked together, they did not have a supervisor-subordinate relationship. The IO did not find they ever engaged in sexual activity but found they created the appearance and fueled rumors. The IO noted another officer, a subordinate of AM who had received what he viewed as an unfair OPR, suspected sexual activity with AM on base. The IO and key decisionmakers assumed intimate relations between the two officers but they never demonstrated the existence of any such standard. If actual intimate relations would not have violated military standards, then the appearance or suspicions of such relations would not have either. The IO did not produce a scrap of evidence or Air Force policy showing that a sexual relationship, even if true, would have hurt good order and discipline or the mission.

The applicant in his response to the LOR dated 13 Jun 17 indicated he was an open atheist and secular humanist and did not consider himself bound to avoid the company of a female officer because others might hold values that find it scandalous. He stayed inside the standards imposed by the Air Force and it should have ended the matter. Instead, his OG/CC conducted an impromptu inquiry of his own.

On 17 Nov 17, the OG/CC ordered a second investigation. The IO found he conversed with a woman at a hotel bar. He was in an Air Force flight suit but the woman was in civilian clothes. The IO found she stood with her back against his body and his hands on her waist while he spoke closely into her ear. The IO made these findings based on photos and film footage that do not show these things. He is standing behind the woman with his right hand on her hip as if to steady her while they appear to be looking in the same direction. The photos were taken by an O-4 who was not on good terms with the applicant. The applicant served as a witness against him regarding his actions while deployed.

The video shows the applicant leaves the room and another officer, also wearing a flight suit, moves in behind the woman, staying close to her and sometimes putting his arm around her. The woman talks to other officers, civilian men, and to two other women in civilian clothes, sometimes touching, hugging or shaking hands. The applicant returns with drinks about 2356 hours. He departs to the left at 0008 hours while the woman departs to the right in the company of another woman around 0010 hours. The IO falsely summarizes the events. There were no witnesses who stated the applicant knew the woman and the woman testified that the events at the bar were nothing too out of the ordinary. In search of false statements, the IO collected a private text message from the applicant to AM, which stated that the picture of him was snapped as the woman was up against him because the bar was jammed and he had to move one leg around her at a time to get faced away from the bar. The IO then questioned others about private conversations about the night of 16 Oct 17 in search of false statements. On 26 Jan 18, the OG/CC issued a second reprimand based on the claim he fraternized with an enlisted member and engaged in

CUI//SP-MIL/SP-PRVCY

unprofessional behavior and that he had been untruthful to his chain of command. He rebutted the LOR and AM also provided a memorandum objecting to the IO's use of the private text to her as part of the "false statements" charge. He also submitted a letter from his wife requesting the OG/CC cease imposing his own values and that the nature of his relationships was only a concern between them.

On 15 Mar 18, based on the recommendation of the OG/CC, the wing commander (WG/CC) intended to request the Commanding General (CG) of the DC National Guard involuntarily curtail his AGR tour. The basis of the curtailment was the two LORs. He did not return to active duty until 14 May 19, when through his own initiative, he was able to secure further duty as an activated reservist. If his AGR tour had not been curtailed, he would have remained on active duty from Jun 18 to 14 May 19.

The applicant's complete submission is at Exhibit H.

In an email dated 10 Mar 25, counsel requested an in-person hearing for purposes of clarification of the people related to the case.

## APPLICABLE AUTHORITY/GUIDANCE

DAFI 36-2603, *Air Force Board for Correction of Military Records (AFBCMR),* paragraph 4.7. Board Hearings. Applicants may request a personal appearance formal hearing via video teleconference (VTC) before the Board. Whether or not the Board authorized a VTC formal hearing is predicated on its finding that the applicant's presence, with or without counsel, would materially add to its understanding of the issues involved. The Board has the sole discretion to determine whether to grant a VTC hearing.

ANGI 36-101, *Air National Guard Active Guard and Reserve (AGR) Program*, paragraph 8.1.1, The Adjutant General (TAG) or the Commanding General (CG) is the final authority for determining whether individuals who are not in sanctuary will be separated from the AGR program. AGR personnel must complete the specified period of their orders unless released due to any of the following provisions: 8.1.1.2, An involuntary tour curtailment (paragraph 8.5).

Paragraph 8.5., Involuntary Tour Curtailment. Commanders considering involuntary curtailment should use all quality force tools available (referral OPR, LOCs, LORs and nonjudicial punishment) prior to initiating an involuntary curtailment. Depending on the nature of the involuntary curtailment, commanders may consider discharge in lieu of involuntary curtailment.

10 U.S.C. § 1552, the Secretary of the Air Force (SecAF) may correct any military record the Secretary considers necessary to correct an error or remove an injustice. However, the Board, action on behalf of the SecAF, is without authority to correct a State ANG record when the alleged error or injustice occurred in service of the respective state occurred under 32 U.S.C. status.

OpJAGAF 2014-6 Air National Guard, The SecAF's authority to take appropriate administrative action against ANG officer personnel to ensure consistency does not deprive the Governor/TAG of their own administrative authority and responsibility over ANG officers and their conduct. There is no "double jeopardy" prohibition to administrative dispositions from both chains of command/lines of authority as one is federal and the other is state. Consequently, an ANG officer may be issued an LOR, LOA or LOC by the SecAF's delegated authority and the governor for the same conduct. In conclusion, pursuant to the authority delegated to the ANG commander by the

**CUI//SP-MIL/SP-PRVCY**

SecAF, it is permissible to impose administrative disciplinary actions if there is a federal nexus between the officer's ANG membership and a violation of law or federal military standards.

Per 10 U.S.C. § 615(a)(3), DoDI 1320.14, *DoD Commissioned Officer Promotion Program Procedures*, Department of the Air Force Policy Memorandum (DAFPM) 2021-36-03, *Adverse Information for Total Force Officer Selection Boards*, dated 14 Jan 21. DAFI 36-2907, *Adverse Administrative Actions* and DAFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force*. All adverse information an officer receives will be filed in the officer selection record (OSR) and be considered by promotion selection, special selection, and selective continuation boards to the grade of O-4 and above (to include processes for O-3 promotions that have "extraordinary adverse information").   Adverse information is any substantiated finding or conclusion from an officially documented investigation or inquiry or any other credible information of an adverse nature.   To be adverse, the information must be derogatory, unfavorable or of a nature that reflects unacceptable conduct, integrity or judgement on the part of the individual.  Adverse information includes but is not limited to any substantiated finding or conclusion from an investigation or inquiry, regardless of whether command action was taken, court-martial findings of guilt, nonjudicial punishment (NJP) pursuant to Article 15, LOR, letter of admonishment, relief of command for cause, removal from developmental education for cause, and letter of counseling.  All adverse information as defined will be permanently placed in the record.  Except for set aside of a court-martial or NJP action, removal of adverse information from the records may only be directed by an AFBCMR recommendation.

DAFI 36-2907, *Adverse Administrative Actions*, Paragraph 2.2., The Standard of Proof for adverse administrative action is a "preponderance of the evidence."  This standard will be used when evaluating the evidence and every element of the alleged offenses.

Paragraph 2.2.1., A preponderance of the evidence merely means that it is more likely than not that a fact exists.  Preponderance of the evidence is not determined solely by the volume of witnesses or documentary evidence supporting or refuting an allegation.  Rather, it is based on the totality of the circumstances, the inherent or probability or improbability of the evidence and a determination as to the weight and significance of the evidence and the credibility of the witnesses.

DAFMAN 1-101, *Commander Directed Investigation*, paragraph 1.4., The standard of proof for a CDI is preponderance of the evidence.  A preponderance of the evidence is defined as the greater weight of credible evidence.  When the greater weight of credible evidence supports the alleged events, it means the events as alleged are more likely than not to have occurred and the IO may consider the events proven.  While the amount of evidence is something to consider, less credible evidence will not trump a smaller about of more credible evidence. Some additional things to consider when weighing the evidence are witness demeanor, opportunity for knowledge, bias, motive, intent and the ability to recall and relate events.  At all times, IOs must use their own common sense, life experiences and knowledge of the ways of the world to assess the credibility of witnesses they interview and the evidence gathered in the investigation.

Paragraph 3.1.1., Standards of Conduct. CDIs may be used to investigate whether an individual has violated a standard defined by law, regulation or policy.  A CDI could be the appropriate tool to investigate whether conduct violated the applicable standard.

AFI 36-2909, *Air Force Professional Relationships and Conduct*,  paragraph 2.2. Unprofessional Relationships.  Relationships are unprofessional, whether pursued on or off duty, when the relationship detracts from the authority of superiors or results in or reasonably creates the appearance of favoritism, misuse of office or position or the abandonment of organizational goals

CUI//SP-MIL/SP-PRVCY

for personal interests. Unprofessional relationships can exist between officers, between enlisted members, between officers and enlisted members, between military personnel and civilian employees or between Air Force members and contractor personnel.

Paragraph 3.1.1. Fraternization is a unique type of unprofessional relationship between an officer and enlisted member that is specifically criminalized in the UCMJ under Article 134, Fraternization. Fraternization exists when a relationship between an officer and an enlisted member puts the enlisted member on terms of military equality with the officer in such a way that prejudices good order and discipline or brings discredit upon the armed forces. This custom of the service recognizes that officers will not form personal relationships with enlisted members on terms of military equality, whether on or off duty.

Paragraph 3.1.1.1. Whether the contact or association constitutes fraternization depends on the surrounding circumstances. Factors to be considered include whether the conduct has compromised the chain of command, resulted in the appearance of partiality or otherwise undermined good order, discipline, authority or morale. The prohibition on fraternization extends beyond organizational and chain of command lines to include members of different services or different Air Force components. In short, it extends to all officer and enlisted relationships.

AFI 1-1, *Air Force Standards*, Paragraph 2.2.3. Unprofessional relationships can develop between officers, between enlisted members, between officers and enlisted members, between officers or enlisted members and cadets and between military personnel and civilian employees or contractor personnel when standards are not maintained.

Paragraph 2.2.5., There is a long standing and well-recognized custom in military service as well as set forth in the Uniform Code of Military Justice (UCMJ) and Department of Air Force (DAF) issuances, that officers and enlisted personnel shall not fraternize. Fraternization exists when a relationship between an officer and an enlisted member puts the enlisted member of terms of military equality with the officer in such a way that prejudices good order and discipline in the armed forces or is of a nature to bring discredit upon the armed forces. Excessive socialization and undue familiarity, real or perceived, degrades leadership and interferes with command authority and mission effectiveness.

**FINDINGS AND CONCLUSION**

1. The application was timely filed.

2. The applicant exhausted all available non-judicial relief before applying to the Board.

3. After reviewing all Exhibits, the Board remains unconvinced the evidence presented demonstrates an error or injustice. Pursuant to the CoFC remand order filed 3 Sep 24, the Board reconsidered the applicant's request. The Board viewed the photographs, the bar's security video footage and the evidence provided in the applicant's DD Form 149 dated 2 Oct 24. Counsel contends the CDI ROIs dated 31 May 17 and 19 Jan 18, which formed the basis for his LORs dated 13 Jun 17 and 26 Jan 18 and referral OPR for the period ending 1 Nov 18 were based on improper and faulty investigations and the IO failed to establish he violated any standards. Counsel contends the applicant may have violated the personal religious and sexual nature of the IO and other members of his command, but he did not violate any Air Force standards. However, the Board disagrees.

**CUI//SP-MIL/SP-PRVCY**

Counsel contends the photographs and the bar's camera security video invalidate certain findings against the applicant. However, the Board does not find the photographs or video compelling or persuasive to find the applicant did not compromise his standing as an FGO, did not engage in fraternization with an enlisted member or engage in unprofessional behavior for which he received the LOR dated 26 Jan 18. The Board finds the photographs and security video show the bar does not appear to be so busy that people are unable to pass by. The video shows the applicant in a flight suit sitting on a bar stool in very close contact to the female in civilian clothes for an extended period of time. Her back is pressed against him, his right hand is on her right hip and at times her head appears to be leaning back on his shoulder. The applicant stated in his rebuttal response to the LOR he did not know she was an enlisted member and he was not previously acquainted with her. However, based on the photographs and the video, the Board finds it appears the applicant and the enlisted female airman were acquainted. They were also both attending the same event at the hotel. While the applicant claims his behavior was not lude, this is not the standard to find a relationship is unprofessional. The Board notes AFI 36-2909 states relationships are unprofessional when it reasonably creates the appearance of misuse of office or position or the abandonment of organizational goals for personal interests and are unprofessional or standards are not met. With respect to the applicant's LOR dated 13 Jun 17, the Board notes the CDI ROI dated 31 May 17 includes multiple witness testimonies pertaining to the applicant's unprofessional relationship with AM. Moreover, the investigation uncovered other misconduct by members of his unit which resulted in adverse actions. The Board acknowledges the applicant's wife submitted a letter to the OG/CC requesting him to stop imposing his own values and that the nature of his relationships were only a matter between them. The applicant also indicated he was an atheist and not bound to traditional values. However, as an airman and an FGO, the applicant is required to adhere to military standards, to include maintaining professional relationships as required by Air Force regulations, although he may not personally agree with the standards. While counsel disagrees with the IO's findings, counsel has provided insufficient evidence of any wrongdoing by the applicant's commander or the IO. Based on the preponderance of the evidence, the Board finds the CDIs dated 31 May 17 and 19 Jan 18 were conducted in accordance with DAFMAN 1-101. It is also noteworthy to reiterate the standard of proof for a CDI is the preponderance of the evidence, which is defined as the greater weight of credible evidence. Counsel also attempts to discredit the IO based on their perceived values; however, DAFMAN 1-101 also states that IOs must use their own common sense, life experiences and knowledge of the ways of the world to assess the credibility of witnesses they interview and the evidence gathered in the investigation. Nonetheless, there is no evidence the IO applied any other standard regarding the definitions of fraternization and unprofessional relationships than what is contained within Air Force regulations. The LORs were based on the substantiated allegations in the CDI ROIs. The Board conducted an independent review of the CDIs dated 31 May 17 and 19 Jan 18 and finds no evidence the applicant was issued the LORs contrary to the evidence. The CDI ROIs include testimony from multiple witnesses which affirm the veracity of the substantiated allegations. Counsel also argues the applicant's OG/CC was not authorized to issue the applicant the 13 Jun 17 LOR for misconduct committed while the applicant was on Title 10 orders. However, pursuant to the authority delegated to ANG commanders by the SecAF, it is permissible to impose administrative disciplinary actions, such as an LOR, if there is a federal nexus between the officer's ANG membership and a violation of law or federal military standards. In view of the preponderance of the evidence and the substantiated allegations, the Board finds the applicant's LORs dated 13 Jun 17 and 26 Jan 18 and referral OPR ending 1 Nov 18 are required to be filed in his records per 10 U.S.C. § 615(a)(3), DoDI 1320.14 and DAFI 36-2907.

Counsel also requests the applicant's records be corrected to show he was not curtailed from his AGR tour on 30 Jun 18 and he be awarded an additional 257 days of active duty service, back pay, BAH, BAS, ACIP and ACP. However, the Board, which serves on behalf of the SecAF, is without

CUI

**CUI//SP-MIL/SP-PRVCY**

authority to reinstate the applicant on a Title 32 AGR tour as this authority remains with the State CG or TAG. Moreover, ANGI 36-101, states the CG or TAG is the final authority for AGR tours, to include involuntary curtailments. Accordingly, the Board finds insufficient evidence to grant the applicant any additional active duty service credit for a period of time he did not serve or provide any back pay, to include BAH, BAS, ACP and ACIP. Therefore, the Board recommends against correcting the record.

4. The applicant has not shown a personal appearance, with or without counsel, would materially add to the Board's understanding of the issues involved.

**RECOMMENDATION**

The Board recommends informing the applicant the evidence did not demonstrate material error or injustice, and the Board will reconsider the application only upon receipt of relevant evidence not already presented.

**CERTIFICATION**

The following quorum of the Board, as defined in Department of the Air Force Instruction (DAFI) 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)*, paragraph 2.1, considered Docket Number BC-2021-02580-2 in Executive Session on 11 Mar 25:

> Mr. William L. Troy III, Panel Chair
> Mr. Neil R. Greene, Panel Member
> Mr. John M. Piva, Panel Member

All members voted against correcting the record. The panel considered the following:

> Exhibit F: Record of Proceedings, w/ Exhibits A-E, dated 26 Apr 22.
> Exhibit G: CoFC Remand Order, Filed 3 Sep 24.
> Exhibit H: Application, DD Form 149, w/atchs, dated 2 Oct 24.
> Exhibit I: Documentary evidence, including relevant excerpts from official records.
> Exhibit J: Counsel's response, dated 10 Mar 25.

Taken together with all Exhibits, this document constitutes the true and complete Record of Proceedings, as required by DAFI 36-2603, paragraph 4.12.9.

3/17/2025

X  MYG
_____

MICHELLE Y. GRIFFIN
Board Operations Manager, AFBCMR
Signed by: GRIFFIN.MICHELLE.YVETTE.1047556798

# DEPARTMENT OF THE AIR FORCE
## WASHINGTON DC

**Office of the Assistant Secretary**

Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmers Lane
Joint Base Andrews NAF Washington, MD 20762-6435

Dear Applicant:

After careful consideration of your application, Docket Number BC-2021-02580-2, the Air Force Board for Correction of Military Records determined there was insufficient evidence of an error or injustice. Accordingly, your application is denied.

You have the right to request reconsideration. To do so, you must send in a new DD Form 149, *Application for Correction of Military Record*, with supporting evidence, to the address above. You must present and clearly identify evidence not considered with your original application. Please note that restating facts previously addressed by the Board, making uncorroborated personal observations, or making additional arguments are not grounds for reopening a case.

This action is taken under authority delegated by the Secretary of the Air Force.

Sincerely,

3/20/2025

X *Deborah F Davidson*
_____

Signed by: USAF
DEBORAH F. DAVIDSON, GS-15, DAF
Executive Director
Air Force Board for Correction of Military Records

Attachment:
Record of Proceedings



CUI//SP-MIL/SP-PRVCY

# UNITED STATES AIR FORCE
# BOARD FOR CORRECTION OF MILITARY RECORDS

## ADDENDUM TO RECORD OF PROCEEDINGS

**IN THE MATTER OF:**

JENNER M. TORRENCE

**DOCKET NUMBER:** BC-2021-02580-2

**COUNSEL:** JOSEPH D. WILKINSON II

**HEARING REQUESTED:** YES

---

**APPLICANT'S REQUEST**

The Board reconsider his request for the following:

1. The conclusions of the commander directed investigations (CDI) completed on 31 May 17 and 19 Jan 18 be found invalid.

2. His letters of reprimand (LOR) dated 13 Jun 17 and 26 Jan 18 be removed from his record.

3. His referral officer performance report (OPR) for the reporting period ending 1 Nov 18 be removed from his record.

The applicant also makes the following new requests:

1. His record be corrected to reflect he was not curtailed from his Active Guard Reserve (AGR) tour on 30 Jun 18.

2. His retirement records be adjusted to reflect an additional 257 days of active duty service.

3. He receive active duty back pay in the amount of $74,762.00, basic allowance for housing (BAH) and basic allowance for subsistence (BAS) in the amount of $2,162.00 and Aviation Career Incentive Pay (ACIP) in the amount of $7,140.00 for the period of 30 Jun 18 to 14 Mar 19.

4. He receive $75,000.00 in aviation continuation pay (ACP).

**STATEMENT OF FACTS**

The applicant is a retired Air Force lieutenant colonel (O-5).

On 29 Mar 16, the applicant entered a period of active duty with the ANG as an AGR.

The Commander Directed Investigation (CDI) Report of Investigation (ROI) Concerning Inappropriate Relationships and Other Misconduct dated 31 May 17 reflects an investigating officer (IO) was appointed to investigate allegations the applicant, a married man, and another officer and married woman (AM) wrongfully had sexual intercourse to the prejudice of good order and discipline. The investigation involved one complainant; however, the scope of the

Controlled by: SAF/MRB
CUI Categories: SP-MIL/SP-PRVCY
Limited Dissemination Control: N/A
POC: SAF.MRBC.Workflow@us.af.mil

CUI//SP-MIL/SP-PRVCY

investigation widened as information was gathered from multiple witnesses to the events that occurred during a unit deployment from Dec 16 to Feb 17. The following allegation was substantiated:

**Allegation 2.** The applicant knowingly had an extramarital affair or unprofessional relationship. Based on the preponderance of the evidence and credible testimony regarding the temporary duty (TDY) and circumstantial evidence, the IO concluded the applicant knowingly had an extramarital affair or unprofessional relationship. **(SUBSTANTIATED).**

The ROI states the facts for Allegation 2 include the observations made by the complainant on the evening of 4 May 17 around 1900 hours. Further, multiple witnesses came forward to tell the IO the long series of events that created a strong appearance the applicant and AM were engaged in an unprofessional relationship (at a minimum) that was prejudicial to good order and discipline and was of a nature to potentially bring discredit. The complainant's belief the applicant and AM were engaged in sexual intercourse in the vault located on base the evening of 4 May 17 was just one of several examples where an inappropriate relationship was apparent. There were 14 witnesses, to include the applicant and AM, interviewed for the CDI.

On 13 Jun 17, the applicant received an LOR from the ANG OG/CC. The applicant was reprimanded for his inappropriate relationship with a fellow officer (AM) in the OG. He was reprimanded for displaying poor judgment and failure to fulfill his responsibilities as a field grade officer (FGO) from Dec 16 to May 17. His actions during the period created the perception of an inappropriate relationship with another officer, his actions were prejudicial to good order and discipline and were of a nature to bring discredit upon the Armed Forces. It was stated the LOR would remain on file in accordance with Air Force and Inspector General (IG) regulations.

The CDI ROI Concerning the Abuse of Authority and Other Misconduct dated 19 Jan 18 reflects an IO was appointed to conduct a CDI into all aspects of events that occurred on 16 Oct 17 involving an altercation between the applicant and PD while the two were on TDY. The ROI includes four allegations pertaining to the applicant. The following two allegations were substantiated:

**Allegation 3:** On 16 Oct 17, the applicant engaged in an unprofessional relationship (fraternization) as the term is defined in AFI 36-2909, *Air Force Professional Relationships and Conduct*. A video showed the applicant with a female in civilian clothes who was an enlisted services team member of another state ANG. The IO also noted the applicant was married to someone else. **(SUBSTANTIATED).**

**Allegation 5:** On 16 Oct 17, the applicant made false statements concerning the 16 Oct 17 allegations. After reviewing the various witness testimonies, to include the applicant's interview with his attorney stating he could not remember the events, video and texts, the IO concluded the applicant made false statements. **(SUBSTANTIATED).**

On 26 Jan 18, the applicant received a LOR from the ANG OG/CC. The LOR states an investigation disclosed that on 16 Oct 17, while on a TDY assignment, he compromised his standing as an FGO while at the hotel bar. While in uniform, he fraternized with an enlisted member and engaged in unprofessional behavior, a discredit to an officer of his rank, the Air Force and the Armed Forces. He was also untruthful to his chain of command concerning the 16 Oct 17 encounter, choosing to make false verbal and written statements about the allegations on a number of occasions. His actions and false statements were prejudicial to good order and discipline,

contrary to core values of the Air Force, unbecoming of an FGO and were of a nature to bring discredit upon the Armed Forces.

In the rebuttal to the LOR dated 5 Feb 18, the applicant stated he did not intentionally convey anything false. He did his best to clarify. During the CDI interview, he stated to the IO that AM had resent the text he sent to her about the evening of 16 Oct 17. He did not recall the event the same way it was portrayed in his text to her. At the time he sent AM the text, he was still trying to mentally reconstruct the details. He was disappointed the IO did not include his clarification. He did not feel his account substantively contradicted any video evidence. He also did not commit fraternization. He was not previously acquainted with the individual and did not know she was enlisted. Per his own recollection and as portrayed by the video evidence, he did nothing lude or indecent during the encounter sitting at the bar. He did not believe any of his actions compromised the chain of command or good order in discipline. He would assure this type of interaction did not again occur in the future. He wished he had terminated the interaction more quickly but did not believe it constituted an inappropriate relationship.

On 15 Mar 18, the ANG Wing Commander (WG/CC), in accordance with ANGI 36-101, *Air National Guard Active Guard and Reserve (AGR) Program*, paragraph 8.5, initiated curtailment of the applicant's AGR tour. The reason for the curtailment of his AGR tour was due to substantiated allegations of false statements made to senior officers and substantiated allegations of unprofessional relationships with both officer and enlisted military members.

On 30 Jun 18, the applicant was honorably released from his AGR tour for completion of required active service. The separation authority is AFI 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members*. He was credited with two years, three months and two days of active duty service.

The applicant received a referral OPR for the reporting period 2 Nov 17 to 1 Nov 18. His rater stated the reason for the referral OPR was appearance of an unfavorable professional relationship at home and while deployed with an O-4, fraternization in uniform at a bar, he lied when asked about the situation and was issued LORs. The additional rater recommended focus on officership and AFI compliance; leadership, professional qualities and judgment needed improvement.

The applicant performed a period of active duty in the Air Force Reserve (AFR) from 15 Mar 19 to 28 Feb 22. He was honorably released from active duty for completion of required active duty service. He was credited with 2 years, 11 months and 16 days of active duty service.

On 9 Jul 20, an investigation was initiated per his State ANG equal opportunity (EO) complaint that the OG/CC discriminated against him. The State Equal Employment Manager oversees the EO complaint process, which is separate from an IG complaint of reprisal filed under 10 U.S.C. § 1034. The EO complaint would undergo an informal request for resolution (IRR). If the complaint is unable to be resolved in 180 days, a formal request for resolution (FRR) can be filed.

On 1 Mar 22, the applicant was placed on the Air Force retired list in the grade of O-5. His active service for retirement is 20 years, 9 months and 10 days. His service per 10 U.S.C. § 1405 is 20 years, 11 months and 28 days.

**RESUME OF THE CASE**

On 22 Jun 21, the Board considered and denied his request for removal of the LORs dated 13 Jun 17 and 26 Jan 18; or in the alternative, they be placed in a secured file, and his referral OPR for

CUI//SP-MIL/SP-PRVCY

the reporting period ending 1 Nov 18 be removed from his record. Counsel, on behalf of the applicant, contended he was the subject of baseless investigations after fraudulent allegations were made in reprisal for making a protected communication, in violation of 10 U.S.C. § 1034. The Board agreed with the State ANG DC JA that counsel had not sustained the burden of proof to overturn the presumption of regularity. While counsel contended the applicant did not commit adultery or engage in fraternization, the Board found the evidence sufficient to conclude the applicant violated AFI 36-2909 by failing to maintain professional relationships and displaying poor judgment, which were prejudicial to good order and discipline. Counsel also contended the applicant was reprised against for making protected communication. However, based on the evidence it appeared the applicant's EEO complaint of discrimination and reprisal were reviewed by the IRR and FRR in accordance with regulation. The Board found no evidence the applicant was reprised against for making protected communication in violation of AFI 90-301 and 10 U.S.C. § 1034. The ANG DC JA in the advisory opinion noted the applicant and AM raised various claims against the Air Force and the National Guard entities. The majority of the claims were rebutted by evidence collected during the various investigations. The sexual harassment allegation substantiated in the CDI was also provided to the WG/CC on 5 Jun 18 and the report was turned over to ANGRC/JA for consideration by a Title 10 commander. Each of the matters were thoroughly investigated. The evidence from the investigation is sufficient.

For an accounting of the applicant's original request and the rationale of the earlier decision, see the AFBCMR Letter and Record of Proceedings at Exhibit F.

The Court of Federal Claims (CoFC) in an order filed on 3 Sep 24 remanded the applicant's case to the AFBCMR for reconsideration and stayed the case pending completion of the remand proceedings. The CoFC ordered the AFBCMR to reconsider the applicant's request and allow him to submit video footage and photographic evidence and any other evidence and arguments not previously filed with the AFBCMR.

Counsel, on behalf of the applicant, submitted a DD Form 149, *Application for Correction of Military Record*, dated 2 Oct 24 for reconsideration of his request. Counsel requested the Board reconsider removal of the LORs and OPR. Counsel also made new requests to show he was not curtailed from his AGR tour in 2018, he receive back pay, to include BAH and BAS, ACP and ACIP.

His first LOR found he violated AFI 1-1, *Air Force Standards*, and AFI 36-2909, *Air Force Professional Relationships and Conduct*, by having an inappropriate relationship with a fellow officer but failed to establish he violated any Air Force standards. The findings of the second investigation contracted the video and photographic evidence it claimed to rest on. He requests a personal appearance so he can testify to the video. Without the badly grounded findings, his AGR tour would not have been curtailed and he would not have received a referral OPR.

His petition parallels the federal action requested and differs from his prior AFBCMR application. His request focuses on the lack of evidence for the conclusion in the CDIs and failure to establish certain findings, in violation of Air Force standards. It is argued a Title 32 commander cannot reprimand an officer for actions taken while on Title 10 status, an argument that was not addressed in his prior petition. The Board also did not previously consider a set of photos and security video footage taken in a bar while TDY.

The first investigation against the applicant was based on a claim he had created a perception of an inappropriate relationship with AM. She was not his subordinate and he did not outrank her at

**CUI//SP-MIL/SP-PRVCY**

the time. The investigation did not establish the suspicions were true, and even if they were true they would not have violated AFI 1-1 and AFI 36-2909, or any other military standard.

The second investigation was based on a claim he fraternized with an enlisted airman in a bar while TDY. However, the photo and video footage contradict this finding. They would be glad to demonstrate before the Board in a personal appearance.

The reprimands and the referral OPR were improper. The command's later personnel actions, particularly the curtailment of his AGR tour, rested on the same investigation were also improper. The Board should find the actions improper and order the applicant to receive appropriate compensation.

The applicant and AM were both deployed between Dec 16 and Feb 17. At the time, they were on Title 10 orders. While they worked together, they did not have a supervisor-subordinate relationship. The IO did not find they ever engaged in sexual activity but found they created the appearance and fueled rumors. The IO noted another officer, a subordinate of AM who had received what he viewed as an unfair OPR, suspected sexual activity with AM on base. The IO and key decisionmakers assumed intimate relations between the two officers but they never demonstrated the existence of any such standard. If actual intimate relations would not have violated military standards, then the appearance or suspicions of such relations would not have either. The IO did not produce a scrap of evidence or Air Force policy showing that a sexual relationship, even if true, would have hurt good order and discipline or the mission.

The applicant in his response to the LOR dated 13 Jun 17 indicated he was an open atheist and secular humanist and did not consider himself bound to avoid the company of a female officer because others might hold values that find it scandalous. He stayed inside the standards imposed by the Air Force and it should have ended the matter. Instead, his OG/CC conducted an impromptu inquiry of his own.

On 17 Nov 17, the OG/CC ordered a second investigation. The IO found he conversed with a woman at a hotel bar. He was in an Air Force flight suit but the woman was in civilian clothes. The IO found she stood with her back against his body and his hands on her waist while he spoke closely into her ear. The IO made these findings based on photos and film footage that do not show these things. He is standing behind the woman with his right hand on her hip as if to steady her while they appear to be looking in the same direction. The photos were taken by an O-4 who was not on good terms with the applicant. The applicant served as a witness against him regarding his actions while deployed.

The video shows the applicant leaves the room and another officer, also wearing a flight suit, moves in behind the woman, staying close to her and sometimes putting his arm around her. The woman talks to other officers, civilian men, and to two other women in civilian clothes, sometimes touching, hugging or shaking hands. The applicant returns with drinks about 2356 hours. He departs to the left at 0008 hours while the woman departs to the right in the company of another woman around 0010 hours. The IO falsely summarizes the events. There were no witnesses who stated the applicant knew the woman and the woman testified that the events at the bar were nothing too out of the ordinary. In search of false statements, the IO collected a private text message from the applicant to AM, which stated that the picture of him was snapped as the woman was up against him because the bar was jammed and he had to move one leg around her at a time to get faced away from the bar. The IO then questioned others about private conversations about the night of 16 Oct 17 in search of false statements. On 26 Jan 18, the OG/CC issued a second reprimand based on the claim he fraternized with an enlisted member and engaged in

CUI//SP-MIL/SP-PRVCY

unprofessional behavior and that he had been untruthful to his chain of command. He rebutted the LOR and AM also provided a memorandum objecting to the IO's use of the private text to her as part of the "false statements" charge. He also submitted a letter from his wife requesting the OG/CC cease imposing his own values and that the nature of his relationships was only a concern between them.

On 15 Mar 18, based on the recommendation of the OG/CC, the wing commander (WG/CC) intended to request the Commanding General (CG) of the DC National Guard involuntarily curtail his AGR tour. The basis of the curtailment was the two LORs. He did not return to active duty until 14 May 19, when through his own initiative, he was able to secure further duty as an activated reservist. If his AGR tour had not been curtailed, he would have remained on active duty from Jun 18 to 14 May 19.

The applicant's complete submission is at Exhibit H.

In an email dated 10 Mar 25, counsel requested an in-person hearing for purposes of clarification of the people related to the case.

## APPLICABLE AUTHORITY/GUIDANCE

DAFI 36-2603, *Air Force Board for Correction of Military Records (AFBCMR),* paragraph 4.7. Board Hearings. Applicants may request a personal appearance formal hearing via video teleconference (VTC) before the Board. Whether or not the Board authorized a VTC formal hearing is predicated on its finding that the applicant's presence, with or without counsel, would materially add to its understanding of the issues involved. The Board has the sole discretion to determine whether to grant a VTC hearing.

ANGI 36-101, *Air National Guard Active Guard and Reserve (AGR) Program*, paragraph 8.1.1, The Adjutant General (TAG) or the Commanding General (CG) is the final authority for determining whether individuals who are not in sanctuary will be separated from the AGR program. AGR personnel must complete the specified period of their orders unless released due to any of the following provisions: 8.1.1.2, An involuntary tour curtailment (paragraph 8.5).

Paragraph 8.5., Involuntary Tour Curtailment. Commanders considering involuntary curtailment should use all quality force tools available (referral OPR, LOCs, LORs and nonjudicial punishment) prior to initiating an involuntary curtailment. Depending on the nature of the involuntary curtailment, commanders may consider discharge in lieu of involuntary curtailment.

10 U.S.C. § 1552, the Secretary of the Air Force (SecAF) may correct any military record the Secretary considers necessary to correct an error or remove an injustice. However, the Board, action on behalf of the SecAF, is without authority to correct a State ANG record when the alleged error or injustice occurred in service of the respective state occurred under 32 U.S.C. status.

OpJAGAF 2014-6 Air National Guard, The SecAF's authority to take appropriate administrative action against ANG officer personnel to ensure consistency does not deprive the Governor/TAG of their own administrative authority and responsibility over ANG officers and their conduct. There is no "double jeopardy" prohibition to administrative dispositions from both chains of command/lines of authority as one is federal and the other is state. Consequently, an ANG officer may be issued an LOR, LOA or LOC by the SecAF's delegated authority and the governor for the same conduct. In conclusion, pursuant to the authority delegated to the ANG commander by the

CUI

**CUI//SP-MIL/SP-PRVCY**

SecAF, it is permissible to impose administrative disciplinary actions if there is a federal nexus between the officer's ANG membership and a violation of law or federal military standards.

Per 10 U.S.C. § 615(a)(3), DoDI 1320.14, *DoD Commissioned Officer Promotion Program Procedures*, Department of the Air Force Policy Memorandum (DAFPM) 2021-36-03, *Adverse Information for Total Force Officer Selection Boards*, dated 14 Jan 21. DAFI 36-2907, *Adverse Administrative Actions* and DAFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force*. All adverse information an officer receives will be filed in the officer selection record (OSR) and be considered by promotion selection, special selection, and selective continuation boards to the grade of O-4 and above (to include processes for O-3 promotions that have "extraordinary adverse information").    Adverse information is any substantiated finding or conclusion from an officially documented investigation or inquiry or any other credible information of an adverse nature.    To be adverse, the information must be derogatory, unfavorable or of a nature that reflects unacceptable conduct, integrity or judgement on the part of the individual.  Adverse information includes but is not limited to any substantiated finding or conclusion from an investigation or inquiry, regardless of whether command action was taken, court-martial findings of guilt, nonjudicial punishment (NJP) pursuant to Article 15, LOR, letter of admonishment, relief of command for cause, removal from developmental education for cause, and letter of counseling.  All adverse information as defined will be permanently placed in the record.  Except for set aside of a court-martial or NJP action, removal of adverse information from the records may only be directed by an AFBCMR recommendation.

DAFI 36-2907, *Adverse Administrative Actions*, Paragraph 2.2., The Standard of Proof for adverse administrative action is a "preponderance of the evidence."   This standard will be used when evaluating the evidence and every element of the alleged offenses.

Paragraph 2.2.1., A preponderance of the evidence merely means that it is more likely than not that a fact exists.   Preponderance of the evidence is not determined solely by the volume of witnesses or documentary evidence supporting or refuting an allegation.  Rather, it is based on the totality of the circumstances, the inherent or probability or improbability of the evidence and a determination as to the weight and significance of the evidence and the credibility of the witnesses.

DAFMAN 1-101, *Commander Directed Investigation*, paragraph 1.4., The standard of proof for a CDI is preponderance of the evidence.  A preponderance of the evidence is defined as the greater weight of credible evidence.  When the greater weight of credible evidence supports the alleged events, it means the events as alleged are more likely than not to have occurred and the IO may consider the events proven.  While the amount of evidence is something to consider, less credible evidence will not trump a smaller about of more credible evidence. Some additional things to consider when weighing the evidence are witness demeanor, opportunity for knowledge, bias, motive, intent and the ability to recall and relate events.  At all times, IOs must use their own common sense, life experiences and knowledge of the ways of the world to assess the credibility of witnesses they interview and the evidence gathered in the investigation.

Paragraph 3.1.1., Standards of Conduct. CDIs may be used to investigate whether an individual has violated a standard defined by law, regulation or policy.  A CDI could be the appropriate tool to investigate whether conduct violated the applicable standard.

AFI 36-2909, *Air Force Professional Relationships and Conduct*,  paragraph 2.2. Unprofessional Relationships.   Relationships are unprofessional, whether pursued on or off duty, when the relationship detracts from the authority of superiors or results in or reasonably creates the appearance of favoritism, misuse of office or position or the abandonment of organizational goals

CUI//SP-MIL/SP-PRVCY

for personal interests. Unprofessional relationships can exist between officers, between enlisted members, between officers and enlisted members, between military personnel and civilian employees or between Air Force members and contractor personnel.

Paragraph 3.1.1. Fraternization is a unique type of unprofessional relationship between an officer and enlisted member that is specifically criminalized in the UCMJ under Article 134, Fraternization. Fraternization exists when a relationship between an officer and an enlisted member puts the enlisted member on terms of military equality with the officer in such a way that prejudices good order and discipline or brings discredit upon the armed forces. This custom of the service recognizes that officers will not form personal relationships with enlisted members on terms of military equality, whether on or off duty.

Paragraph 3.1.1.1. Whether the contact or association constitutes fraternization depends on the surrounding circumstances. Factors to be considered include whether the conduct has compromised the chain of command, resulted in the appearance of partiality or otherwise undermined good order, discipline, authority or morale. The prohibition on fraternization extends beyond organizational and chain of command lines to include members of different services or different Air Force components. In short, it extends to all officer and enlisted relationships.

AFI 1-1, *Air Force Standards*, Paragraph 2.2.3. Unprofessional relationships can develop between officers, between enlisted members, between officers and enlisted members, between officers or enlisted members and cadets and between military personnel and civilian employees or contractor personnel when standards are not maintained.

Paragraph 2.2.5., There is a long standing and well-recognized custom in military service as well as set forth in the Uniform Code of Military Justice (UCMJ) and Department of Air Force (DAF) issuances, that officers and enlisted personnel shall not fraternize. Fraternization exists when a relationship between an officer and an enlisted member puts the enlisted member of terms of military equality with the officer in such a way that prejudices good order and discipline in the armed forces or is of a nature to bring discredit upon the armed forces. Excessive socialization and undue familiarity, real or perceived, degrades leadership and interferes with command authority and mission effectiveness.

**FINDINGS AND CONCLUSION**

1. The application was timely filed.

2. The applicant exhausted all available non-judicial relief before applying to the Board.

3. After reviewing all Exhibits, the Board remains unconvinced the evidence presented demonstrates an error or injustice. Pursuant to the CoFC remand order filed 3 Sep 24, the Board reconsidered the applicant's request. The Board viewed the photographs, the bar's security video footage and the evidence provided in the applicant's DD Form 149 dated 2 Oct 24. Counsel contends the CDI ROIs dated 31 May 17 and 19 Jan 18, which formed the basis for his LORs dated 13 Jun 17 and 26 Jan 18 and referral OPR for the period ending 1 Nov 18 were based on improper and faulty investigations and the IO failed to establish he violated any standards. Counsel contends the applicant may have violated the personal religious and sexual nature of the IO and other members of his command, but he did not violate any Air Force standards. However, the Board disagrees.

**CUI//SP-MIL/SP-PRVCY**

Counsel contends the photographs and the bar's camera security video invalidate certain findings against the applicant. However, the Board does not find the photographs or video compelling or persuasive to find the applicant did not compromise his standing as an FGO, did not engage in fraternization with an enlisted member or engage in unprofessional behavior for which he received the LOR dated 26 Jan 18. The Board finds the photographs and security video show the bar does not appear to be so busy that people are unable to pass by. The video shows the applicant in a flight suit sitting on a bar stool in very close contact to the female in civilian clothes for an extended period of time. Her back is pressed against him, his right hand is on her right hip and at times her head appears to be leaning back on his shoulder. The applicant stated in his rebuttal response to the LOR he did not know she was an enlisted member and he was not previously acquainted with her. However, based on the photographs and the video, the Board finds it appears the applicant and the enlisted female airman were acquainted. They were also both attending the same event at the hotel. While the applicant claims his behavior was not lude, this is not the standard to find a relationship is unprofessional. The Board notes AFI 36-2909 states relationships are unprofessional when it reasonably creates the appearance of misuse of office or position or the abandonment of organizational goals for personal interests and are unprofessional or standards are not met. With respect to the applicant's LOR dated 13 Jun 17, the Board notes the CDI ROI dated 31 May 17 includes multiple witness testimonies pertaining to the applicant's unprofessional relationship with AM. Moreover, the investigation uncovered other misconduct by members of his unit which resulted in adverse actions. The Board acknowledges the applicant's wife submitted a letter to the OG/CC requesting him to stop imposing his own values and that the nature of his relationships were only a matter between them. The applicant also indicated he was an atheist and not bound to traditional values. However, as an airman and an FGO, the applicant is required to adhere to military standards, to include maintaining professional relationships as required by Air Force regulations, although he may not personally agree with the standards. While counsel disagrees with the IO's findings, counsel has provided insufficient evidence of any wrongdoing by the applicant's commander or the IO. Based on the preponderance of the evidence, the Board finds the CDIs dated 31 May 17 and 19 Jan 18 were conducted in accordance with DAFMAN 1-101. It is also noteworthy to reiterate the standard of proof for a CDI is the preponderance of the evidence, which is defined as the greater weight of credible evidence. Counsel also attempts to discredit the IO based on their perceived values; however, DAFMAN 1-101 also states that IOs must use their own common sense, life experiences and knowledge of the ways of the world to assess the credibility of witnesses they interview and the evidence gathered in the investigation. Nonetheless, there is no evidence the IO applied any other standard regarding the definitions of fraternization and unprofessional relationships than what is contained within Air Force regulations. The LORs were based on the substantiated allegations in the CDI ROIs. The Board conducted an independent review of the CDIs dated 31 May 17 and 19 Jan 18 and finds no evidence the applicant was issued the LORs contrary to the evidence. The CDI ROIs include testimony from multiple witnesses which affirm the veracity of the substantiated allegations. Counsel also argues the applicant's OG/CC was not authorized to issue the applicant the 13 Jun 17 LOR for misconduct committed while the applicant was on Title 10 orders. However, pursuant to the authority delegated to ANG commanders by the SecAF, it is permissible to impose administrative disciplinary actions, such as an LOR, if there is a federal nexus between the officer's ANG membership and a violation of law or federal military standards. In view of the preponderance of the evidence and the substantiated allegations, the Board finds the applicant's LORs dated 13 Jun 17 and 26 Jan 18 and referral OPR ending 1 Nov 18 are required to be filed in his records per 10 U.S.C. § 615(a)(3), DoDI 1320.14 and DAFI 36-2907.

Counsel also requests the applicant's records be corrected to show he was not curtailed from his AGR tour on 30 Jun 18 and he be awarded an additional 257 days of active duty service, back pay, BAH, BAS, ACIP and ACP. However, the Board, which serves on behalf of the SecAF, is without

CUI

**CUI//SP-MIL/SP-PRVCY**

authority to reinstate the applicant on a Title 32 AGR tour as this authority remains with the State CG or TAG. Moreover, ANGI 36-101, states the CG or TAG is the final authority for AGR tours, to include involuntary curtailments. Accordingly, the Board finds insufficient evidence to grant the applicant any additional active duty service credit for a period of time he did not serve or provide any back pay, to include BAH, BAS, ACP and ACIP. Therefore, the Board recommends against correcting the record.

4. The applicant has not shown a personal appearance, with or without counsel, would materially add to the Board's understanding of the issues involved.

**RECOMMENDATION**

The Board recommends informing the applicant the evidence did not demonstrate material error or injustice, and the Board will reconsider the application only upon receipt of relevant evidence not already presented.

**CERTIFICATION**

The following quorum of the Board, as defined in Department of the Air Force Instruction (DAFI) 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)*, paragraph 2.1, considered Docket Number BC-2021-02580-2 in Executive Session on 11 Mar 25:

      Mr. William L. Troy III, Panel Chair
      Mr. Neil R. Greene, Panel Member
      Mr. John M. Piva, Panel Member

All members voted against correcting the record. The panel considered the following:

      Exhibit F: Record of Proceedings, w/ Exhibits A-E, dated 26 Apr 22.
      Exhibit G: CoFC Remand Order, Filed 3 Sep 24.
      Exhibit H: Application, DD Form 149, w/atchs, dated 2 Oct 24.
      Exhibit I: Documentary evidence, including relevant excerpts from official records.
      Exhibit J: Counsel's response, dated 10 Mar 25.

Taken together with all Exhibits, this document constitutes the true and complete Record of Proceedings, as required by DAFI 36-2603, paragraph 4.12.9.

3/17/2025

X  MYG
_____
MICHELLE Y. GRIFFIN
Board Operations Manager, AFBCMR
Signed by: GRIFFIN.MICHELLE.YVETTE.1047556798



RECEIVED
APR 2 1 2025
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

SAF/MRBC (AFBCMR)
3351 Celmers Lane
Joint Base Andrews NAF Washington, MD 20762-6435

Lisa Reyes, Clerk of Court
United States Court of Federal Claims
Howard T. Markey National Courts Building
717 Madison Place, NW
Washington, D.C. 20439