No. 24-258
(Judge Katherine C. Davis)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

JENNER TORRENCE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

|  |  |
|---|---|
|  | BRETT A. SHUMATE<br>Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | WILLIAM J. GRIMALDI<br>Assistant Director |
| Of Counsel: | DELISA M. SANCHEZ<br>Trial Attorney |
| MAJ DAVID L. CHEWNING<br>Litigation Attorney<br>United States Air Force<br>Military Personnel Division<br>1500 West Perimeter Road, Suite 1370<br>Joint Base Andrews, MD 20762 | Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 616-0337 |
| September 10, 2025 | Attorneys for Defendant |

**TABLE OF CONTENTS**

**PAGE**

STATEMENT OF THE ISSUES ................................................................................................. 1

STATEMENT OF THE CASE ................................................................................................... 2

    I.       Nature Of The Case ............................................................................................. 2

    II.      Statement of The Facts ........................................................................................ 2

          A.      Mr. Torrence's Service In The Air Force ................................................. 2

          B.      Command Directed Investigations And Letters Of Reprimand Issued To Mr. Torrence ...................................................................................... 3

                 1.       CDI And LOR Stemming From Unprofessional Relationship ........................................................................... 3

                 2.       CDI And LOR Regarding Fraternization And False Statements Made By Mr. Torrence ............................................. 4

          C.      Course Of Proceedings In The AFBCMR ............................................... 6

          D.      Relief Sought By Mr. Torrence In His Amended Complaint .................... 7

ARGUMENT .............................................................................................................................. 7

    I.       Standard Of Review ............................................................................................ 7

          A.      Judgment On The Administrative Record ............................................... 7

          B.      The Court's Review Of AFBCMR Decisions Is Limited ........................ 8

    II.      Mr. Torrence's Contention That Col. Vargas Did Not Possess Authority To Reprimand Him Is Meritless ............................................................................... 10

    III.    The Board's Decision Was Not Arbitrary And Capricious And Is Supported By Substantial Evidence ...................................................................................... 13

          A.      Mr. Torrence's Behavior Violated AFI 36-2909 .................................... 13

          B.      Limited Circumstances Exist For Challenging CDI Factual Findings And None Apply To Mr. Torrence's Case .............................................. 14

C.     The AFBCMR Correctly Rejected Mr. Torrence's Allegations Of Reprisal For Protected Communications As Unsubstantiated ................. 14

D.     The Conclusions Of Both CDIs Were Supported By Factual Evidence ................................................................................................ 15

E.     The AFBCMR Appropriately Concluded That The LORs Should Not Be Removed From Mr. Torrence's Military Record........................ 15

F.     The AFBCMR Correctly Concluded That The Referral OPR Is Accurate And Should Remain In Mr. Torrence's Military Record.......... 17

G.     The ABCMR Did Not Err In Finding That No Basis Exists To Correct Mr. Torrences's Military Record Regarding AGR Curtailment.............. 18

H.     The ABCMR Correctly Found No Basis Exists To Adjust Mr. Torrence's Retirement Records For Additional Active Duty ........... 19

I.     The ABCMR Did Not Err In Concluding That Mr. Torrence Is Not Entitled To Back Pay, BAH, BAS, Or ACIP......................................... 19

J.     The AFBCMR Justifiably Rejected Mr. Torrence's Request For Aviation Continuation Pay ................................................................... 20

IV.    Mr. Torrence Inappropriately Seeks Re-Weighing Of The Evidence Substantiating The CDIs And The LORs ....................................................... 20

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*A&D Fire Prot., Inc. v. United States*,
   72 Fed. Cl. 126 (2006)....................................................................................................8

*Adkins v. United States*,
   68 F.3d 1317 (Fed. Cir.1995)...................................................................................9, 19

*Bannum Inc. v. United States*,
   404 F.3d 1346 (Fed. Cir. 2005)............................................................................7, 8, 21

*Barnick v. United States*,
   591 F.3d 1372 (Fed. Cir. 2010).................................................................................9

*Bernard v. United States*,
   59 Fed. Cl. 497 (2004)..........................................................................................10, 21

*Bice v. United States*,
   72 Fed. Cl. 432 (2006)...........................................................................................8

*Bockoven v. United States*,
   727 F.2d 1558 (Fed. Cir.1984) *cert. denied*,
   469 U.S. 880 (1984)...............................................................................................10

*Chambers v. United States*,
   417 F.3d 1218 (Fed. Cir. 2005)................................................................................9

*Dorl v. United States*,
   200 Ct. Cl. 626 (1973) *cert. denied*,
   414 U.S. 1032 (1973).........................................................................................8, 13

*Fort Carson Support Servs. v. United States*,
   71 Fed. Cl. 571 (2006)...........................................................................................8

*Hary v. United States*,
   223 Ct. Cl. 10 (1980)............................................................................................10

*Heisig v. United States*,
   719 F.2d 1153 (Fed. Cir. 1983)..............................................................................9, 21

*Koretsky v. United States*,
   57 Fed. Cl. 154 (2003).........................................................................................8, 13

*Lions Raisins, Inc. v. United States*,
 51 Fed. Cl. 238 (2001)................................................................................................21

*Long v. United States*,
 12 Cl. Ct. 174 (1987)...................................................................................................9

*Murphy v. United States*,
 993 F.2d 871 (Fed.Cir.1993)..................................................................................9, 20

*Myers v. United States*,
 50 Fed. Cl. 674 (2001)......................................................................................12, 13, 22

*Neutze v. United States*,
 88 Fed. Cl. 763 (2009)...............................................................................................12

*Porter v. United States*,
 163 F.3d 1304 (Fed. Cir. 1998)..................................................................................8, 13

*Rominger v. United States*,
 72 Fed. Cl. 268 (2006).................................................................................................9

*Saab Cars USA, Inc. v. United States*,
 434 F.3d 1359 (Fed. Cir. 2006).....................................................................................8

*Sargisson v. United States*,
 913 F.2d 918 (Fed. Cir. 1990).......................................................................................9

*Skinner v. United States*,
 594 F.2d 824 (Ct. Cl. 1979)......................................................................................9, 22

*Tech. Syst., Inc. v. United States*,
 50 Fed. Cl. 216 (2001)................................................................................................21

*Van Cleave v. United States*,
 70 Fed. Cl. 674 (2006)...............................................................................................9, 13

*Voge v. United States*,
 844 F.2d 776 (Fed. Cir. 1988)....................................................................................20

*Wronke v. Marsh*,
 787 F.2d 1569 (Fed. Cir. 1986)..................................................................................9, 21

*Wyatt v. United States*,
 23 Cl. Ct. 314 (1991)....................................................................................................9

**STATUTES**

10 U.S.C. § 615(a)(3) ................................................................................... 12, 13

10 U.S.C. § 1034 .................................................................................................. 14

10 U.S.C. § 1552 ........................................................................................ 1, 14, 19

**RULES**

RCFC 52.1 ................................................................................................... 1, 8, 9

RCFC 56.1 ............................................................................................................ 8

**REGULATIONS**

32 C. F. R. § 865 ................................................................................................. 1

**MISCELLANEOUS**

Air Force Instruction 1-1 ............................................................................... 3, 4, 5

Air Force Instruction 90-301 ............................................................................... 14

Air Force Instruction 36-2406 ............................................................................. 17

Air Force Instruction 36-2907 ....................................................................... *passim*

Air National Guard Instruction 36-101 ................................................................ 18

Department of Air Force Manual 1-101 .......................................................... 16, 17

Department of Defense Instruction 1320.14 ........................................................ 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JENNER M. TORRENCE,                    )
                                       )
        Plaintiff,                     )
                                       )       No. 24-258
        v.                             )       (Judge Katherine C. Davis)
                                       )
THE UNITED STATES,                     )
                                       )
        Defendant.                     )

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this opposition to the motion for judgment on the administrative record submitted by plaintiff, Jenner Torrence, and cross-motion for judgment on the administrative record.  We respectfully request that the Court grant judgment upon the administrative record in favor of the United States.  In support of our motion, we rely upon Mr. Torrence's amended complaint (Amend. Compl.), the administrative record[1], and the following brief.

STATEMENT OF THE ISSUES

Whether the Air Force Board for Correction of Military Records's (AFBCMR's or board's)[2] finding that Col. Vargas possessed authority to reprimand Mr. Torrence was contrary to law or regulation.

---

[1] "AR___" refers to the cites in the Administrative Record filed on July 25, 2024 (pages 1-228) and on June 18, 2025 (pages 229-717).

[2] The AFBCMR is a civilian review board that is empowered to review applications for the presence of an error or injustice in Air Force personnel records and make recommendations for corrective action.  10 U.S.C. § 1552 (a) (1); 32 C.F.R. § 865, et. seq. (setting out the policies, procedures, and governing rules of the AFBCMR).

Whether Mr. Torrence has shown that the AFBCMR's decision was arbitrary and capricious where the board found Mr. Torrence failed to establish error or injustice in the Air Force's Command Directed Investigations (CDIs) and the two Letters of Reprimand (LOR) that the Air Force issued him pursuant to the CDIs, and substantial evidence supports the board's decision.

STATEMENT OF THE CASE

I.    Nature Of The Case

Mr. Torrence filed his complaint with the Court on February 20, 2024.  Mr. Torrence amended his complaint on June 4, 2025, after remand proceedings in the AFBCMR and a remand decision by the board finding that Mr. Torrence failed to demonstrate an error or injustice with respect to the two CDIs and LORs that he challenged.  In this Court, Mr. Torrence alleges factual and procedural errors in two CDIs that substantiated charges against him and the two LORs that stem from the substantiated charges – largely the same allegations that he advanced in the AFBCMR.  Mr. Torrence urges the Court to reject the factual of findings substantiated by the CDIs and adopt Mr. Torrence's factual accounts of the circumstances that he believes led to the two CDIs and find – relying on Mr. Torrence's factual accounts – that the AFBCMR's most recent remand decision is based on erroneous facts.  In other words, Mr. Torrence urges the Court to re-weigh the evidence and factual findings underlying the CDIs.

II.    Statement of The Facts

A.    Mr. Torrence's Service In The Air Force

Mr. Torrence was commissioned in the Air Force on June 10, 2000. AR203.  Throughout his tenure, Mr. Torrence served primarily as a pilot.  AR640.  On April 29, 2012, Mr. Torrence left active duty to serve in the District of Columbia Air National Guard (DCANG).  AR681-686.

2

From March 29, 2016, and until June 20, 2018, Mr. Torrence served in an Active Guard and Reserve Status (AGR).  AR640-643.  Mr. Torrence left active duty on June 30, 2018.  AR640. Thereafter he served only on the weekends, on drilling status, but on March 13, 2018, Mr. Torrence again transitioned to active duty and remained in that status until February 28, 2022. AR617.  After serving over 20 years of active-duty service, Mr. Torrence voluntarily retired from the Air Force on March 1, 2022.  AR608-609.

B.    Command Directed Investigations And Letters Of Reprimand Issued To Mr. Torrence

Between April 2017 and January 2018, Mr. Torrence was the subject of two separate CDIs.  Both investigations substantiated findings of misconduct by Mr. Torrence and resulted in the issuance of two LORs to Mr. Torrence.

1.    CDI And LOR Stemming From Unprofessional Relationship

On or around June 4, 2017, a CDI substantiated allegations that Mr. Torrence had engaged in an unprofessional relationship with a junior field grade officer.  AR283.  As part of this finding, the Investigating Officer (IO) determined that the unprofessional relationship between Mr. Torrence and the junior field grade officer covered a time period that overlapped Mr. Torrence's Title 32 full-time National Guard Duty and his Title 10 Active Duty statuses. AR277.  Specifically, the IO concluded that Mr. Torrence knowingly had "an extramarital affair or unprofessional relationship that was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces of the United States in violation of AFI 1-1 and AFI 36-2909."  AR283.

Based on the IO's substantiated allegations in the CDI report, and his own observations, on or about June 13, 2017, Col. John E. Vargas, Mr. Torrence's Air National Guard (ANG) Commander, served him a LOR for the appearance of an unprofessional relationship that was

3

negatively affecting the good order and discipline of the unit. AR285-286. The LOR reprimanded Mr. Torrence for his "inappropriate relationship with a fellow officer in the Operations Group" because in engaging in that relationship Mr. Torrence displayed "poor judgment" and failed to fulfill his "responsibilities as a Field Grade Officer during the period starting on or about December 2016 and ending on or about May 2017." AR285. The letter also stated that Mr. Torrence's actions "during this period created the perception of an inappropriate relationship with another officer, were prejudicial to good order and discipline, and were of a nature to bring discredit upon the Armed Forces of the United States in violation of AFIs 1-1 and 36-2909." *Id*. Mr. Torrence provided a lengthy response and rebuttal to the LOR. AR289-332. Col. Vargas considered Mr. Torrence's rebuttal and chose to sustain the LOR. AR287.

> 2.    CDI And LOR Regarding Fraternization And False Statements Made By Mr. Torrence

By a memorandum dated November 21, 2017, Col. Vargas notified Mr. Torrence that a CDI had been initiated to investigate allegations that on October 16, 2017, while attending a Weapons and Tactics Conference (WEPTAC) in Tucson, Arizona, Mr. Torrence had an altercation with another member of the DCANG and fraternized with an enlisted ANG member. AR334-335.

In January 2018, the CDI substantiated allegations that Mr. Torrence fraternized with an enlisted female while he was in uniform at a bar and made a false statement. AR346, 350. The IO concluded, based on video evidence, that Mr. Torrence, while in uniform, engaged in an unprofessional manner with a female enlisted member of the Toledo ANG. AR344-350. The IO also concluded that Mr. Torrence's statements that the female enlisted ANG member at the bar "fell into his crotch and or straddled him and or he turned his barstool towards them to get up and go to the restroom and a girl is up against him because the bar is jammed and I have to move

4

one leg around [her] at a time to get faced away from the bar" and that then he "pushed her away" are not supported by available video footage evidence. AR350. The IO further concluded that the video footage and photographs shows Mr. Torrence and the female enlisted Toledo ANG member in very close physical contact with Mr. Torrence's hands around her waist. *Id*. Thus, the IO concluded that Mr. Torrence's sworn statement about the events on October 16, 2017, was inconsistent with   witness statements and the video footage documenting his physical contact with the enlisted Toledo ANG member. *Id*.

Based on the substantiated allegations in the CDI, Col. Vargas served Mr. Torrence with a LOR. The LOR explained to Mr. Torrence that he compromised his standing as a field grade officer while at the Hilton Doubletree Bar and that on that day, while in uniform, he "fraternized with an enlisted member and engaged in unprofessional behavior; a discredit to an officer of [his] rank, the Air Force, and the Armed Forces." AR354. The letter further states that Mr. Torrence was "untruthful" to his chain of command concerning his encounter with the enlisted Toledo ANG member, "choosing to make false verbal and written statements" about the allegation against him on a number of occasions." AR354. The letter further advised Mr. Torrence that his actions and his "false statements about the same were prejudicial to good order and discipline, contrary to the core values of the United State Air Force, unbecoming of a field grade officer in the United States Air Force, and were of a nature to bring discredit upon the Armed Forces of the United States in violation of AFIs 1-1 and 36-2909." AR 354. The LOR also explained to Mr. Torrence that if the LOR is sustained it would be placed in an Unfavorable Information File (UIF). AR355.

By letter dated February 5, 2018, Mr. Torrence provided a rebuttal to the LOR through his attorney. AR358-377. Col. Vargas considered his response and sustained the LOR.

Thereafter, Mr. Torrence's AGR assignment was curtailed.  The curtailment was ordered by the Commanding General of the DCNG.

On May 31, 2019, the ANG notified Mr. Torrence that his Officer Performance Report (OPR) would be referred according to AFI 36-2406, para 1.10.  AR379.  On August 17, 2019, Mr. Torrence submitted a rebuttal to this referred OPR.  AR395-404.  On September 3, 2019, after considering the rebuttal, Col. Vargas, removed "one of the bullets in an unsigned section of the evaluation that did not fall within the rating period" and afforded Mr. Torrence an opportunity to provide a response to the "modification of his evaluation."  AR392.  On September 14, 2019, Mr. Torrence provided a rebuttal to the revised referred OPR.  AR425-430.

C.    Course Of Proceedings In The AFBCMR

Mr. Torrence sought relief twice at the AFBCMR.  In April 2022, the AFBCMR denied Mr. Torrence's request to have the LOR's removed from his military record, finding that Mr. Torrence "violated AFI 36-2909 by failing to maintain professional relationships and displaying poor judgment."  AR242-48.

In September 2024, this Court remanded Mr. Torrence's claims to the AFBCMR for further consideration, allowing him to submit video and photographic evidence.  In its remand decision, the AFBCMR denied Mr. Torrence's application for relief, finding the LORs  and AGR curtailment proper.  AR231, 239-40.  The AFBCMR considered Mr. Torrence's arguments and found "multiple witness testimonies" and video evidence supported the LORs and the AGR curtailment.  AR 231, 239-40.

6

D.    Relief Sought By Mr. Torrence In His Amended Complaint

Mr. Torrence seeks the following relief from this Court in his amended complaint:

> 1. Back pay equal to what he would have received between 30 June 2018 and 14 March 2019, less the amount he actually received as a drilling reservist;
>
> 2. Basic Allowance for Housing for the same period, $75,000 in Aviation Continuation Pay, and $6,300 in Aviation Career Incentive Pay;
>
> 3. An order that his retirement pay be increased to reflect an additional 257 days of service, with back pay of the difference between the date of his retirement and the date of judgment;
>
> 4. Declaratory relief, affirming that the reprimands, the OPR, and the curtailment were arbitrary, capricious, unsupported by substantial evidence, contrary to Air Force standards, and apparently based on the desire of certain leaders to impose their own ideas of personal conduct in place of Air Force standards;
>
> 5. Injunctive relief, ordering the removal of the offending reprimands, OPR, and any other documents evincing the ill-grounded accusations from the plaintiff's military personnel files;
>
> 6. Upon an appropriate showing, attorney's fees under the Equal Access to Justice Act; and
>
> 7. Any other relief deemed appropriate by the Court.

Amend. Comp. at pp. 23-24.

ARGUMENT

I.    Standard Of Review

A.    Judgment On The Administrative Record

A motion for judgment upon the administrative record is distinguishable from a motion for summary judgment. *Bannum Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1372 (Fed. Cir. 2006). In reviewing a motion for judgment upon the administrative record, the Court asks whether, given all of the

7

disputed and undisputed facts, a party has met its burden of proof based upon the evidence in the record. *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citation omitted). The existence of a question of fact neither precludes the granting of a motion for judgment nor requires this Court to conduct an evidentiary proceeding. *See Saab Cars*, 434 F.3d at 1372; *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006). Instead, such fact questions must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1357.

RCFC 52.1 provides for judgment upon the administrative record. RCFC 52.1. The standard of review for an RCFC 52.1 motion for judgment upon the administrative record depends on the specific law to be applied in the specific case. *See* Rules Committee Note to RCFC 52.1; *Rominger v. United States*, 72 Fed. Cl. 268, 272 (2006); *but see Bice v. United States*, 72 Fed. Cl. 432, 441 (2006) ("The standard of review for a motion for judgment on the administrative record under RCFC 52.1 remains unchanged from the standard under the now-repealed RCFC 56.1.").

B.    The Court's Review Of AFBCMR Decisions Is Limited

In this case, the Court is governed by the well-settled standards governing review of military correction board decisions. Once a plaintiff seeks relief from a military corrections board, the board's determination binds him unless he can demonstrate that it was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998) (citation omitted); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003). Mr. Torrence can only meet his considerable burden by presenting "cogent and convincing evidence" that the AFBCMR's

8

decision was in error. *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973), *cert. denied*, 414 U.S. 1032 (1973).

When the Court is asked to review the administrative decision of a military agency, the standard of review is deferential so as to "not disturb the decision of the [agency] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)); *see also Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986). As the Federal Circuit has explained, "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir.1995). Instead, this Court's review is limited to certain narrow circumstances where military regulations provide a standard against which the Court can measure the military's conduct. *Murphy v. United States*, 993 F.2d 871, 873 (Fed.Cir.1993) (quoting *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990). Thus:

> It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial.

*Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979) (citations omitted).

This standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original). When substantial evidence supports a board's action, and that action is reasonable in light of all the evidence presented, the Court will not disturb the result because it does not sit as a "super correction board[.]" *Van Cleave v. United States*, 70 Fed. Cl. 674, 678-79 (2006).

9

Judicial review in this case is limited to the administrative record before the AFBCMR. *See Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991); *Long v. United States*, 12 Cl. Ct. 174, 177 (1987). Courts presume civil and military officials in the armed forces act properly and in accordance with the law. *Bockoven v. United States*, 727 F.2d 1558, 1563 (Fed. Cir.1984), *cert. denied*, 469 U.S. 880 (1984). Accordingly, Mr. Torrence bears the heavy burden of overcoming the "strong, but rebuttable, presumption" that the military discharges its duties "correctly, lawfully and in good faith." *Bernard v. United States*, 59 Fed. Cl. 497, 501 (2004) (quoting *Hary v. United States*, 223 Ct. Cl. 10, 17 (1980)).

II.    Mr. Torrence's Contention That Col. Vargas Did Not Possess Authority To Reprimand Him Is Meritless

Mr. Torrence alleges one procedural error by the Air Force in the issuance of the first reprimand (unprofessional relationship) which he claims the AFBCMR failed to rectify: that Col. Vargas, a Title 32 Commander, did not possess authority to issue him the reprimand because a Title 32 commander cannot reprimand him for what he did, or did not do, while he was mobilized under Title 10. Mr. Torrence argues as follows:

> [T]he plaintiff and Major A.M. were both members of the 113th OG, a D.C. Air National Guard unit. As acknowledged by the investigation, while serving in this unit under Col Vargas' command, they were governed by Title 32 of the United States Code. But when they were deployed to Guam, they were serving on active duty under the National Guard Bureau's 201st Mission Support Squadron (MSS), and were governed by Title 10, United States Code.
>
> Col Vargas' reprimand was primarily based on actions taken when the plaintiff was under Title 10, not Title 32 authority. As the Judge Advocate General of the Air Force has explained in OpJAGAF 2019-21, a commander's authority to issue reprimands depends on the status of the accused at the time of the alleged misconduct. Title 10 commanders can reprimand Air Force personnel for what they do on Title 10 status; Title 32 commanders can reprimand Air Force personnel for what they do on Title 32 status. But commanders cannot reprimand across status; a Title 10

10

> commander cannot reprimand an ANG member for what he does while under title 32 authority. By logical inference, a Title 32 commander cannot reprimand an ANG member for what he does on Title 10 status, either.
>
> Thus, the reprimand was not only based on no substantial evidence even on its own terms but was largely based on conduct the commander had no authority to reprimand the plaintiff for.

Amended Compl. at ¶¶ 28, 29, and 30.  In support of his argument, Mr. Torrence relies on an opinion of the Judge Advocate General (JAG) of the Air Force, which he provided to the AFBCMR.  AR566-67.  That opinion, however, does not state that a Title 32 commander cannot reprimand him for what he did, or did not do, while he was mobilized under Title 10.  Rather, it "discusses the extent to which a commander on Title 10 orders may take adverse administrative action against an Air National Guard (ANG) member."  AR566.  The JAG opinion does not contain any mention of, or any reference to, a Title 32 commander's authority to reprimand a servicemember under his/her command for what a servicemember did while mobilized under Title 10 orders.  *See* AR566-567.  Nor does it contain any substance for the proposition advanced by Mr. Torrence in his amended complaint that "[b]y logical inference, a Title 32 commander cannot reprimand an ANG member for what he does on Title 10 status."  Am. Compl. ¶29.  Mr. Torrence's argument is completely unsupported and the Court should reject it.

Mr. Torrence also contends, citing to AR12, that the AFBCMR did not cite any authority in support of its finding that a Title 32 commander cannot reprimand an ANG member for what he does while on Title 10 status.  Pl. MJAR at 26.  Page 12 of the Administrative Record, however, does not contain any findings by the AFBCMR; the document on that page is page three of Mr. Torrence's DD FORM 149 signed on June 22, 2021.  *See* AR10-12.  Furthermore, in his June 22, 2021, application to the board Mr. Torrence did not argue that a Title 32 commander

11

cannot reprimand an ANG member for what he does while on Title 10 status (AR10-26) so the AFBCMR did not address that issue in its April 26, 2022 decision. *See* AR4-9.

Mr. Torrence first advanced his argument that a Title 32 commander cannot reprimand an ANG member for what he does while on Title 10 status in the application that he submitted to the AFBCMR after this Court remanded the matter to the board. *See* AR489. The AFBCMR considered the argument and rejected it citing to 10 U.S.C. § 615(a)(3), DoDI 1320.14 and DAFI 36-2907:

> Counsel also argues the applicant's OG/CC was not authorized to issue the applicant the 13 Jun 17 LOR for misconduct committed while the applicant was on Title 10 orders. However, pursuant to the authority delegated to ANG commanders by the SecAF, it is permissible to impose administrative disciplinary actions, such as an LOR, if there is a federal nexus between the officer's ANG membership and a violation of law or federal military standards. In view of the preponderance of the evidence and the substantiated allegations, the Board finds the applicant's LORs dated 13 Jun 17 and 26 Jan 18 and referral OPR ending 1 Nov 18 are required to be filed in his records per 10 U.S.C. § 615(a)(3), DoDI 1320.14 and DAFI 36-2907.

AR240. Thus, contrary to Mr. Torrence's assertion in his opening brief, the AFBCMR finding is supported by authority. Mr. Torrence does not contend, much less establish, that the authority cited by the board is inapposite.

Accordingly, Mr. Torrence alleges a procedural error in the processing of his petition for relief. Having sought relief from the AFBCMR, however, Mr. Torrence is bound by the board's determination absent his showing of error. *Myers v. United States*, 50 Fed. Cl. 674, 688-89 (2001). Mr. Torrence's amended complaint, and the arguments set forth in his opening brief, fail to allege which statute or regulation the board supposedly violated by the claimed procedural errors. *See Neutze v. United States*, 88 Fed. Cl. 763, 775-76 (2009) (stating that in the absence of a violation of law or regulation the court was without authority to review the decision to dismiss

12

a military member as the issue was non-justiciable).  Thus, Mr. Torrence's complaint fails to meet his heavy burden of showing the board's decision with his claim concerning Col. Vargas's authority to reprimand him was contrary to law or regulation.  *Myers,* 50 Fed. Cl. at 699.

III.    The Board's Decision Was Not Arbitrary And Capricious And Is Supported By Substantial Evidence

The AFBCMR gave full and fair consideration to Mr. Torrence's petition on remand. This Court presumes that the board discharges its duties lawfully and in good faith.  *Myers,* 50 Fed. Cl. at 689.  Mr. Torrence has not demonstrated by clear and cogent evidence that the board's decision on remand was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  *Dorl*, 200 Ct. Cl.at 633.  Accordingly, the board's decision is binding upon Mr. Torrence, and this Court must decline his invitation to sit as a super correction board in reviewing the board's decision.  *Porter*, 163 F.3d at 1312; *Koretsky*, 57 Fed. Cl. at 158; *Van Cleave*, 70 Fed. Cl. at 678-79.

A.    Mr. Torrence's Behavior Violated AFI 36-2909

The AFBCMR correctly concluded that Mr. Torrence's conduct violated AFI 36-2909, Air Force Professional Relationships and Conduct.  This instruction prohibits relationships that compromise or appear to compromise the integrity of supervisory authority or that have an adverse impact on good order and discipline.  Mr. Torrence's repeated creation of the appearance of an inappropriate relationship with a fellow officer, coupled with his later fraternization with an enlisted Airman and his false statements to his command about his encounter with the enlisted Airman, fell squarely within AFI 36-2909's prohibitions.  The board determined that Mr. Torrence failed to maintain professional relationships and displayed poor judgment, which were prejudicial to good order and discipline.  AR 242-48.  Col. Vargas' decision to issue Mr.

13

Torrence LORs and curtail his AGR tour were thus consistent with Air Force policy and supported by substantial evidence.

        B.      Limited Circumstances Exist For Challenging CDI Factual Findings And None Apply To Mr. Torrence's Case

Air Force Instructions recognize only narrow grounds on which a service member may challenge factual findings made in a CDI. While CDI findings are administrative in nature and not equivalent to judicial determinations, an affected officer may seek correction through the AFBCMR under 10 U.S.C. § 1552. Challenges must demonstrate that the findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to governing Air Force Instructions such as AFI 36-2907. A service member may also point to material procedural error, denial of the opportunity to respond, or reliance on clearly erroneous or incomplete evidence as grounds for relief. In this case, however, the AFBCMR issued both decisions and concluded that none of these circumstances were present. AR239-40, 242-48. The board found the investigations relied on multiple witness statements, corroborating evidence, and were consistent with applicable AFIs, thereby foreclosing Mr. Torrence's attempt to overturn the CDI findings.

        C.      The AFBCMR Correctly Rejected Mr. Torrence's Allegations Of Reprisal For Protected Communications As Unsubstantiated

Mr. Torrence argued to the AFBCMR that he was the victim of reprisal for engaging in protected communications. Both AFI 90-301 and 10 U.S.C. § 1034 prohibit reprisal against service members who make protected disclosures. The AFBCMR explicitly considered this issue in its April 2022 decision and concluded that there was insufficient evidence to support the reprisal claim advanced by Mr. Torrence. AR 242-48. The board determined that Mr. Torrence's equal opportunity and discrimination complaints were processed through appropriate

14

state and Federal channels, and that nothing in the record demonstrated that adverse actions were taken as reprisal for protected communication. The March 2025 AFBCMR decision likewise did not identify any evidence substantiating Mr. Torrence's allegations of reprisal. AR 239-40. Accordingly, Mr. Torrence's reprisal allegations fail as a matter of law and fact and cannot provide a basis for judicial relief.

D.    The Conclusions Of Both CDIs Were Supported By Factual Evidence

The CDIs completed on May 31, 2017, and January 19, 2018, both were supported by substantial factual evidence and justified the resulting adverse actions against Mr. Torrence by way of the LORs. The May 2017 CDI included interviews with 14 witnesses, corroborating testimony, and circumstantial evidence establishing that Mr. Torrence engaged in an inappropriate relationship with a fellow officer, thereby creating an appearance prejudicial to good order and discipline. AR32-44, 232-33. Similarly, the January 2018 CDI reviewed video footage, photographs, and witness accounts to substantiate allegations of Mr. Torrence's fraternization with an enlisted Airman and his false statements to superiors. AR105-11, 233-34. The AFBCMR determined that the evidence presented in both investigations was credible, consistent with Air Force Instructions, and fully supported the findings. AR239-40, 242-48. Accordingly, the conclusions of both CDIs were not arbitrary or capricious, but grounded in factual evidence sufficient to sustain the two LORs issued by Col. Vargas to Mr. Torrence and the curtailment of his AGR tour.

E.    The AFBCMR Appropriately Concluded That The LORs Should Not Be
Removed From Mr. Torrence's Military Record

It is appropriate for the Air Force to maintain the two LORs issued Mr. Torrence in his military record because they are supported by substantial evidence, consistent with Air Force Instructions, and necessary for preserving the integrity of the officer corps. The June 2017 LOR

15

followed an investigation confirming that Mr. Torrence engaged in an inappropriate relationship with a fellow officer, creating an appearance prejudicial to good order and discipline. AR39-44, 232-33. The January 2018 LOR was based on video and photographic evidence, as well as witness testimony, showing fraternization with an enlisted Airman and false statements to his chain of command. AR105-11, 233-34. Both reprimands were issued in accordance with AFI 36-2907, which provides for adverse administrative action when supported by a preponderance of the evidence. The AFBCMR, in its April 2022 and March 2025 decisions, upheld the validity of these reprimands, finding they were not arbitrary, capricious, or unjust. AR239-40, 242-48.

Mr. Torrence's allegation, on page 24 of his motion for judgment, that he was not allowed to rebut two witness statements that Col. Vargas obtained after the first CID, but before issuing the first LOR, is meritless. Mr. Torrence alleges that the first LOR was based on the two statements that he was not allowed to rebut. Pl. MJAR 24. Mr. Torrence then argues that "[d]espite officially being given no opportunity to do so, Mr. Torrence tried to rebut these statements anyway by acquiring and submitting other statements to contradict them" but that Col. Vargas "refused to pay attention to this attempted rebuttal." *Id*. Mr. Torrence, however, provides no cites to the record in support of his allegation other than arguments advanced by his counsel. And he does not provide a cite in the record directing us to the two statements.

In this case, the AFBCMR found that the findings of the first CDI, issued on or around May 32, 2017, were substantiated based on testimony from multiple witnesses, including Mr. Torrence himself and the officer with whom he was alleged to have had an inappropriate relationship. AR240. The record also reflects that Mr. Torrence submitted a written rebuttal to the June 13, 2017 LOR in which he contested the factual findings of the CDI and provided his own version of events. AR289-332. Furthermore, Mr. Torrence concedes that he rebutted both

16

statements.  Pl. MJAR 24.  Thus, contrary to his claim, Mr. Torrence had the opportunity to respond both during the CDI and in rebuttal to the LOR itself.  The AFBCMR concluded that the process satisfied the requirements of AFI 36-2907 and DAFMAN 1-101, which only require that an officer be given notice of adverse information and the chance to present matters in response. AR240.

Mr. Torrence's assertion that he was denied a rebuttal opportunity is unsupported by the administrative record, and his admission on page 24 of his motion for judgment that he did, in fact, rebut the two witness statements he alleges that Col. Vargas obtained after the CDI report issued contradict his assertion.

Removing the LORs from Mr. Torrence's record would undermine lawful command authority, disregard substantiated misconduct, and risk eroding standards of accountability within the Air Force.

F.    The AFBCMR Correctly Concluded That The Referral OPR Is Accurate And Should Remain In Mr. Torrence's Military Record

Mr. Torrence's OPR for the reporting period ending November 1, 2018, is accurate, supported by the record, and the AFBCMR correctly concluded that it should not be removed from Mr. Torrence's military record.  The referral OPR cited specific reasons for the negative evaluation, including Mr. Torrence's appearance of an inappropriate relationship with another officer, fraternization in uniform with an enlisted Airman, and dishonesty when questioned about the incident.  AR233-34.  These reasons were consistent with the substantiated findings of the 2017 and 2018 CDIs and the resulting LORs.  AR39-44, 105-11, 232-34.  AFI 36-2406 requires that referral OPRs accurately document conduct reflecting adversely on an officer's judgment, integrity, or adherence to standards.  The AFBCMR, in both its April 2022 and March 2025 decisions, reviewed Mr. Torrence's referral OPR and determined it was justified by substantiated

17

misconduct and therefor properly issued.  AR239-40, 242-48.  Because the OPR accurately reflects Mr. Torrence's performance and adherence to standards during the rating period, its removal would erase an accurate and necessary record of accountability.  Accordingly, the AFBCMR correctly concluded that there is no basis to remove the referral OPR from Mr. Torrence's military record.

G.    The ABCMR Did Not Err In Finding That There Is No Basis To Correct Mr. Torrence's Military Record Regarding AGR Curtailment

The AFBCMR also correctly determined that there is no valid reason to correct Mr. Torrence's military record to show that he was not curtailed from his AGR tour on June 30, 2018.  The curtailment was based on substantiated misconduct, including Mr. Torrence's inappropriate relationship with another officer, fraternization with an enlisted Airman, and false statements that he made during official inquiries.  AR39-44, 105-11, 232-34.  In accordance with ANGI 36-101, ¶ 8.5, commanders may involuntarily curtail an AGR tour for misconduct, and Brig. Gen. Bozard specifically recommended curtailment on these grounds.  AR564.  The DCNG Commanding General approved the action, and Mr. Torrence was released from AGR status effective June 30, 2018.  AR 466, 234–35.  The AFBCMR in both its April 2022 and March 2025 decisions found that the AGR curtailment was lawful, consistent with regulation, and supported by substantial evidence.  AR239-40, 242-48.  Because the curtailment was properly executed in accordance with Air Force and National Guard policy, the AFBCMR correctly concluded that there is no basis to alter the record to reflect continued AGR service.  Any such correction would ignore substantiated misconduct and undermine lawful command authority.

18

H.    The ABCMR Correctly Found No Basis Exists To Adjust Mr. Torrence's
Retirement Records For Additional Active Duty

Mr. Torrence also seeks to have his retirement records adjusted to reflect an additional

257 days of active-duty service, corresponding to the period following his involuntary AGR

curtailment.  The AFBCMR correctly determined there is no valid basis for such an adjustment.

Mr. Torrence's AGR service was lawfully curtailed on June 30, 2018 for substantiated

misconduct, as discussed above.  AR 232-235, 466, 564.  Because he was properly released from

AGR status, he did not perform the additional service days he now claims.  Retirement credit is

governed by statute and regulation and cannot be granted retroactively absent evidence of error

or injustice under 10 U.S.C. § 1552.  The AFBCMR in its March 2025 decision found no such

error or injustice and determined his retirement service was properly calculated.  AR239-40.  To

adjust Mr. Torrence's retirement records to include days he did not serve would contradict

established law, disregard the lawful curtailment action, and provide an unearned benefit.

Accordingly, the AFBCMR properly rejected this claim.

I.    The ABCMR Did Not Err In Concluding That Mr. Torrence Is Not Entitled To
Back Pay, BAH, BAS, Or ACIP

The AFBCMR also correctly determined that Mr. Torrence is not entitled to active duty

back pay in the amount of $74,762.00, Basic Allowance for Housing (BAH) and Basic

Allowance for Subsistence (BAS) in the amount of $2,162.00, or Aviation Career Incentive Pay

(ACIP) in the amount of $7,140.00 for the period of June 30, 2018 to March 14, 2019.  Because

Mr. Torrence's AGR tour was lawfully curtailed effective June 30, 2018 for substantiated

misconduct (AR232-35, 466, 564), he did not perform active duty during the period for which he

now seeks pay and allowances.  Under well-established law, military members may only receive

pay and benefits for periods of actual service.  *See, e.g.*, *Adkins*, 68 F.3d at 132.  The AFBCMR

19

in its March 2025 decision specifically found that Mr. Torrence was not on active duty during the claimed period and therefore not entitled to compensation. AR239-40. To award such back pay or allowances would constitute an unauthorized windfall for time not served. Accordingly, the AFBCMR properly denied this claim.

> J.    The AFBCMR Justifiably Rejected Mr. Torrence's Request For Aviation Continuation Pay

Mr. Torrence also seeks $75,000.00 in Aviation Continuation Pay (ACP). The AFBCMR correctly denied this claim because eligibility for ACP requires a valid service agreement and continued active-duty aviation service during the obligated period. Mr. Torrence's AGR tour was lawfully curtailed effective June 30, 2018, due to substantiated misconduct and he was therefore not in an active aviation status for the period in question. Because Mr. Torrence did not meet the statutory and regulatory requirements for ACP, including actual performance of qualifying aviation service, there is no basis to award this incentive. The AFBCMR's March 2025 decision properly concluded that Mr. Torrence did not establish an error or injustice warranting such payment. AR239-40. Awarding ACP under these circumstances would contravene the purpose of the program and provide an unwarranted benefit for unserved time. Accordingly, the AFBCMR properly denied Mr. Torrence's claim for ACP.

IV.    Mr. Torrence Inappropriately Seeks Re-Weighing Of The Evidence Substantiating The CDIs And The LORs

All of Mr. Torrence's arguments in his motion for judgment on the administrative record rest on challenging the IO's interpretation of video evidence and credibility determinations. This Court cannot reweigh such evidence. *Murphy*, 993 F.2d at 873. The AFBCMR's decisions rested on substantial evidence and are entitled to deference. *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988).

20

Mr. Torrence contends that the AFBCMR decision "is just as infirm" as the "weak reasoning of the IOs, Col Vargas, and Brig Gen Bozard." Pl. MJAR 29. He argues that, with respect to the first reprimand, the AFBCMR "added nothing to the IO's reasoning, or to Col Vargas'." *Id*. With respect to the second reprimand, Mr. Torrence argues that the AFBCMR "made a feeble effort to shore up the weaknesses in the IO's report" that "runs counter to the evidence that was before it and it cannot be upheld." Pl. MJAR 29-30. Finally, Mr. Torrence contends that the AFBCMR failed to consider "an important aspect of the problem before it" – that Maj. Bielanski and Maj. Doughty "would have been bound by regulation to intervene" had they seen Mr. Torrence fraternizing "with a woman known to be enlisted" and that because they did not intervene there could not have been "anything improper going on" between Mr. Torrence and the enlisted woman at issue. Pl. MJAR 31. Thus, Mr. Torrence states that the AFBCMR decision "cannot be upheld" and that this Court "cannot properly uphold the adverse actions against Mr. Torrence, to include the curtailment." *Id*.

This Court's review of ABCMR decisions is limited. The standard for judgment in such cases differs from the standards applied in the context of a Rule 56 motion for summary judgment, and the question of whether an issue of material fact is disputed is irrelevant. *Bannum*, 404 F.3d at 1355-56; *Lions Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 246-47 (2001); *Tech. Syst., Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). Rather, the Court reviews the correction board's decision to determine whether it was "arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Id*. This standard of review "does not require a reweighing of the evidence, but a

21

determination whether *the conclusion being reviewed* is supported by substantial evidence." *Id.* at 533 (quoting *Heisig*, 719 F.2d at 1157). A plaintiff is required to demonstrate that the board's decision did not meet this standard by cogent and clearly convincing evidence." *See Wronke,* 787 F.2d at 1576; *Bannum*, 404 F.3d at 1356.

This Court "does not sit as a 'super corrections board.'" *Id.* (citing *Skinner v. United States*, 219 Ct. Cl. 322, 594 F.2d 824, 830 (1979)). "Judicial review of a correction board should not be an opportunity for courts to substitute their judgment for that of the military board when reasonable minds could reach differing conclusions." *Id.* Furthermore, this Court "must recognize the strong presumption of regularity accompanying government proceedings, including that the military carries out its responsibilities properly, lawfully and in good faith." *Id.* (citing cases).

Mr. Torrence's allegations that the board's findings are erroneous because the board failed to adopt his views and factual assertions is a disagreement with the weight the board gave to the facts presented. Under the proper standard of review, this Court is precluded from engaging in the reweighing of evidence that Mr. Torrence explicitly requests, and the Court should reject his claim. *Myers*, 50 Fed. Cl. at 689. Accordingly, the Court should reject Mr. Torrence's request that it re-weigh the evidentiary findings of the CDIs.

CONCLUSION

For the reasons stated above, the board's decision is supported by substantial evidence and reasonable in light of all the evidence before the board. Accordingly, this Court should decline Mr. Torrence's invitation to sit as a super correction board, grant the defendant's cross-motion for judgment upon the administrative record, and deny Mr. Torrence's motion for judgment upon the administrative record.

22

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

Of Counsel:                                       /s/Delisa M. Sánchez
                                                  DELISA M. SANCHEZ
MAJ DAVID L. CHEWNING                             Trial Attorney
Litigation Attorney                               Commercial Litigation Branch
United States Air Force                           Civil Division
Military Personnel Division                       U.S. Department of Justice
1500 West Perimeter Road, Suite 1370              P.O. Box 480
Joint Base Andrews, MD 20762                      Ben Franklin Station
                                                  Washington, D.C. 20044
                                                  Telephone: (202) 616-0337

September 10, 2025                                Attorneys for Defendant