**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JENNER TORRENCE,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant, | Case No: 1:24-CV-00258-KCD<br>(Judge Kathryn C. Davis) |

**PLAINTIFF'S MOTION TO PRESENT LIMITED TESTIMONY AT UPCOMING HEARING**

The plaintiff, through counsel, requests leave to present limited testimony at the hearing currently set for May 22, 2026. The plaintiff wishes to present his own testimony for the sole purpose of identifying several persons in the photos and security camera footage that have previously been made part of the administrative record, including one witness whose name is redacted in the record. These persons were well known to the original agency actors, namely the command investigator and the commander who made use of the visual evidence. The purpose of the testimony is to provide the court with knowledge already held by the original agency actors, not to introduce anything that was not before the agency. Mr. Torrence offered this same testimony to the Air Force Board for Correction of Military Records (AFBCMR), but they refused it.[1]

In short, counsel wants to use Mr. Torrence's testimony to let the court see what the agency saw, as the agency saw it. Nothing more, nothing less.

Counsel for the Government has indicated that the Government opposes this motion.

[1] AR 235, 240

## SPECIFIC TESTIMONY SOUGHT TO BE INTRODUCED

Mr. Torrence seeks permission to testify only to the following facts, related to the photos and video that appear in the administrative record:

1. To identify himself, the enlisted woman, and Major Robert Bielanski in the photos.

2. To confirm that the photos represent the moment when Mr. Torrence realized he was being photographed by Maj Paul Doughty, and turned to confront him.

3. To identify himself, the enlisted woman, Major Doughty, and Major Bielanski in the security camera footage (specifically, in Part 2 of video 171016-230008).

4. To identify the actions of himself, the enlisted woman, Major Doughty, and Major Bielanski in the security camera footage, as set forth in Dkt. 31, p. 11-12,[2] and especially the moment that corresponds to the photos (at approximately 9:29 by the video time, or 11:25 by the bar clock).

5. To confirm that Major Bielanski is the witness whose name is redacted at the bottom of AR105 and the top of AR106. Mr. Torrence is aware of this because he has seen the unredacted version of the investigation. (Exhibit 1 hereto.) As an alternative to allowing testimony on this specific point, the court could substitute Exhibit 1 hereto for pages AR 105-106, which are the exact same pages except for the redacted names.

Mr. Torrence offers this testimony to provide background that was available to the agency actors, namely the identities of the persons in the photo and video evidence, and the name of one witness who played a small but significant role in the events.

## BACKGROUND

This motion relates solely to the second accusation against Mr. Torrence, the accusation that he fraternized with an enlisted female and made false statements about having done so.[3] This lawsuit is based partly on Mr. Torrence's observation that the evidence cited by the IO—

---

[2] Counsel notes one mistake on these pages; in the first two entries he lists the bar clock as showing 10:15 at the beginning of part 2 of video 171016-230008. In fact, the clock shows 11:15, and the remaining entries reflect the proper times on both the bar clock and the video. Counsel regrets the error, which is entirely his own.

[3] Compl. ¶¶ 37-47

namely, the photos and video—does not, even arguably, establish what the IO was claiming.[4] In his complaint, and even more in his Motion for Judgment on the Administrative Record, Mr. Torrence has described at some length what does and does not occur in the photos and film.[5] Mr. Torrence also discussed these matters in his prior objections in the record, to include his most recent petition to the AFBCMR.[6] This motion is designed to equip the court to judge Mr. Torrence's claims.

As noted in the complaint, the Investigating Officer (IO) found that the photos and video "clearly showed" Mr. Torrence "engaging in an unprofessional manner with a female."[7] The IO also falsely found that Mr. Torrence's "hands" were on this woman's waist[8] or body.[9] The falsity of these claims is important to Mr. Torrence's case.

The IO also solicited an opinion from Major Robert Bielanski, not that Mr. Torrence *knew* the woman was an enlisted Airman, but that Major Bielanski "thought" that anyone "would know" this fact.[10] The IO did not mention that Major Bielanski was directly observing the events at issue, yet did nothing to stop the supposed "inappropriate" contact—in fact, he was physically friendlier with the woman than Mr. Torrence had been.[11]

As Mr. Torrence has already argued, these facts are significant because of the "wingman" concept imposed by Air Force regulations.[12] If Mr. Torrence had been doing anything untoward with the enlisted woman, Maj Bielanski would have been expected to do something about it. If

---

[4] Compl. ¶¶ 47, 52, 54-55
[5] Compl. ¶¶ 55-58; Dkt. 31, p. 11-12
[6] AR 365, 482-483
[7] Compl. ¶ 41
[8] Compl. ¶¶ 39-40; AR 106.
[9] AR105
[10] Compl. ¶ 45; AR105-106; Exh. 1.
[11] Compl. ¶¶ 45-46, 56
[12] Dkt. 31, p. 30-31.

Maj Bielanski knew everything, saw everything, and did nothing, it was because Mr. Torrence was not violating Air Force standards. The same goes for Maj Bielanski's own conduct. No one stopped it because it did not overstep the bounds. Since Maj Bielanski claimed knowledge of the woman's enlisted status and since he was in a position to observe everything, his identity (which only testimony can establish) is important to Mr. Torrence's case.

## LEGAL STANDARDS

Normally, a Motion for Judgment on the Administrative Record is just what it sounds like. The court's review of military pay claims "is generally limited to the administrative record"[13] and the court resolves military pay claims via cross-motions for judgment on the administrative record, making factual findings from the record evidence as if it were conducting a trial on the record.[14]

The limitation is not strict, however. Neither Federal Circuit precedent nor the court's rules completely preclude consideration of evidence outside the Agency's record.[15] The 2006 Rules Committee Notes on RCFC 52.1 allow the court to accept evidence outside the record, and recommend making such decisions based on the specific law to be applied to the case or generally applicable principles of administrative law. This court employs a "flexible approach" to determine the corpus of evidence that will be considered.[16]

In *Safeguard Base Operations, LLC v. United States*, the Federal Circuit laid out the basic principles: (1) The focus of judicial review is the administrative record already in existence, not

---

[13] *Keltner v. United States*, 165 Fed. Cl. 484, 501-02, *citing Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009).
[14] *Keltner*, 165 Fed. Cl. at 502, *citing Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005).
[15] *Keltner*, 165 Fed. Cl. at 502-03, *citing Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 578 n.45 (2021).
[16] *Global Computer Enterprises, Inc. v. United States*, 88 Fed. Cl. 52, 61-62 (2009).

some new record made initially in the reviewing court.[17] (2) The purpose of limiting review to the administrative record is to prevent the courts from using new evidence to convert the arbitrary-and-capricious standard into *de novo* review.[18] (3) Supplementation of the record "should be limited to cases in which the omission of extra-record evidence precludes effective judicial review."[19] (4) Judicial review is "effective" if it is consistent with the standards of the Administrative Procedure Act.[20] If the trial court finds that supplemental information is necessary to effective review, it must say why on the record.[21] If it does so, the decision to supplement lies within the court's discretion.[22]

In APA cases, other courts have found supplementation to be appropriate to describe background information that was available to the agency when it made its decisions, when that evidence may not be clear to the reviewing court.[23] In an appropriate case, this may include testimony to describe photographic evidence when the photographs themselves were part of the record.[24]

---

[17] *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021), *citing Camp v. Pitts*, 411 U.S. 138, 142 (1973).
[18] *Safeguard*, 989 F.3d at 1348, *citing Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).
[19] *Safeguard*, 989 F.3d at 1348, *citing Axiom Resource*, 564 F.3d at 1380.
[20] *Safeguard*, 989 F.3d at 1348, *citing AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018).
[21] *AgustaWestland*, 880 F.3d at 1331-32, *citing Axiom Resource*, 564 F.3d at 1379-80.
[22] *AgustaWestland*, 880 F.3d at 1331, *citing Axiom Resource*, 564 F.3d at 1378.
[23] *See Seafarers International Union of North America v. United States*, 891 F.Supp. 641, 647 (D.D.C. 1995).
[24] *Oregon Natural Desert Association v. Wetzel*, No. 04-334 , 2005 WL 2002403 at *6-7 (D. Or. Aug. 17, 2005) (permitting agency official to describe what he saw in photographs to clarify what they meant, when those photographs were part of the record).

## ARGUMENT

Mr. Torrence's complaint, and even more his motion for judgment on the administrative record, rely in part on a careful examination of the photo and video evidence.[25] The trial court, unlike the IO and unlike Col Vargas, is not personally familiar with most of the key personnel in the visual evidence (namely Mr. Torrence himself, Maj Bielanski, and Maj Doughty). Mr. Torrence can easily identify them through testimony.

If the court allows this, it will not be changing the nature of this proceeding. The court will not be examining evidence unknown to the agency, nor will it be converting its arbitrary-and-capricious review into *de novo* review. It will simply be providing itself with some basic knowledge of what the pictures in the record show. The IO and Col Vargas had this information at their fingertips. The court should as well. In granting this motion, the court will be applying well established principles of administrative law.

Firstly, if a plaintiff offers non-speculative reasons that the agency considered certain information in making its decision, and the information does not appear in the administrative record, the information may be appropriate for supplementing the record.[26] In this case, the "information" is simply the names that go with the faces in the visual evidence. The photos and videos are not labeled, but the IO drew conclusions from them, implying that she knew who these people were and what they were doing. Also, the IO interviewed these individuals and

[25] *See* Dkt. 31, p. 10-13.
[26] *Franks v. Salazar*, 751 F.Supp.2d 62, 72 (D.D.C. 2010), *citing, inter alia, National Resources Defense Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975); *see also Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996) (permitting the use of extra-record materials if the agency has relied on "documents" not found in the record).

presumably saw their faces.[27] Without speculation one can conclude she knew them by sight. So did Col Vargas, their commander. The court should be armed with the same knowledge.

Secondly, if personal information has been redacted from a record, but that personal information was in front of agency decisionmakers, it should be placed in front of the court as well—unless the parties agree that the information is irrelevant.[28] Here the "personal information" (i.e., the names of the persons depicted) was before the agency decisionmakers, because the IO and Col Vargas knew the officers in question and talked to them. To the trial court, they may appear to be slightly blurry pictures of complete strangers, sometimes taken at an awkward angle. By permitting Mr. Torrence's testimony, the court will quickly and easily equip itself with the same knowledge the IO and Col Vargas had, at least on this point.

Thirdly, and more broadly, extra-record information may be introduced if it is needed to determine whether the agency has considered all relevant factors and has explained its decision.[29] Mr. Torrence has argued that the Air Force included the photos and video in the record but failed completely to consider what they really showed. If the court knows the identities of the persons depicted in the visual evidence, it can readily determine whether Mr. Torrence is right about that.

Mr. Torrence's testimony is necessary for the court to see the visual evidence as clearly as the agency saw it, and therefore to determine if he is correct about whether it supports the findings against him. The court should allow his testimony.

---

[27] AR104-106.

[28] *Browski v. U.S. Customs and Border Protection*, 771 F.Supp.3d 223, 240 (W.D.N.Y. 2025), *citing Public Employees for Environmental Responsibility v. Beaudrau*, No. 10-1067, 2012 WL 12942599 at *8 (D.D.C. Nov. 9, 2012).

[29] *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008); *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996).

Respectfully submitted,

Joseph D. Wilkinson II
Senior Counsel, Tully Rinckey, PLLC
D.C. Bar No. 90032185
2001 L Street NW
Washington, DC 20036
Office: (202) 375-2232
FAX: (716) 462-4455
jwilkinson@tullylegal.com

Sean C Timmons

Sean C. Timmons, Esq., LL.M.
Managing Partner, Tully Rinckey PLLC
Texas Bar No.: 24067908
New York State Bar No.: 5470190
Admitted to Practice in all
Texas Federal Courts
18722 University Blvd., Ste. 235
Sugar Land, TX 77479
(832) 240-3273 Phone
(281) 387-3411 Cell
(832) 241-5998 FAX
Stimmons@tullylegal.com
Counsel for Plaintiff